IN THE SUPREME COURT OF THE STATE OF KANSAS

Nos. 111,550,
111,551

STATE OF KANSAS,
*Appellee*,

v.

CHAD M. JOHNSON,
*Appellant.*

SYLLABUS BY THE COURT

1.

In the context of a motion to withdraw a plea, courts in this state generally consider three nonexclusive factors when judging whether a movant has established manifest injustice: (1) whether the defendant was represented by competent counsel; (2) whether the defendant was misled, coerced, mistreated, or unfairly taken advantage of; and (3) whether the plea was fairly and understandingly made.

2.

When a postsentence motion to withdraw a plea alleges ineffective assistance of counsel, the constitutional test for ineffective assistance must be met to establish manifest injustice.

Review of the judgment of the Court of Appeals in an unpublished opinion filed March 6, 2015. Appeal from Reno District Court; TRISH ROSE, judge. Opinion filed February 16, 2018. Judgment of the Court of Appeals affirming the district court is affirmed. Judgment of the district court is affirmed.

*Christina M. Kerls,* of Kansas Appellate Defender Office, was on the brief for appellant.

1

*Keith E. Schroeder*, district attorney, and *Derek Schmidt,* attorney general, were on the brief for appellee.

The opinion of the court was delivered by

STEGALL, J.: Chad M. Johnson appeals the district court's denial of his postsentencing motion to withdraw pleas. He contends he should have been permitted to withdraw his pleas for three reasons: (1) his counsel and the court did not adequately inform him of the registration required by the Kansas Offender Registration Act (KORA), K.S.A. 22-4901 *et seq.*, or the maximum sentence he could receive if he pled; (2) his attorney misled him regarding the State's position on probation; and (3) his attorney failed to investigate the underlying facts and failed to adequately research possible defenses. For the reasons set forth below, we hold that the district court did not abuse its discretion when it denied Johnson's motion. Accordingly, we affirm.

FACTUAL AND PROCEDURAL BACKGROUND

The State charged Johnson in case 07 CR 368 with one count of possession of methamphetamine with intent to sell (his second such offense), one count of criminal possession of a firearm, and two other drug-related charges. Johnson later entered into a plea agreement with the State. He agreed to plead guilty to the possession of methamphetamine with intent to sell charge, as well as the criminal possession of firearm charge. In exchange, the State agreed to dismiss the remaining counts; not oppose a downward dispositional departure to probation; and recommend that the court impose concurrent sentences.

On August 1, 2008, the district court conducted the plea hearing. At the outset of the hearing, Thomas Stanton—the prosecutor—explained the parties' agreement to the

2

court. Afterwards, the court confirmed with Johnson that this was indeed their agreement, and Johnson pled guilty to the two counts.

Before the court could sentence Johnson at a later date, law enforcement officers arrested Johnson for possession of methamphetamine. The State then charged Johnson in case 08 CR 790 with possession of methamphetamine with intent to sell (his third such offense).

It appears the attorneys and the court handling the first case did not become aware of Johnson's post-plea arrest until the sentencing hearing in 07 CR 368 held on September 26, 2008. As the court was announcing Johnson's sentence, Stanton interjected to inform the court that he had just learned that Johnson had been arrested again for possession of methamphetamine. Donald Snapp—Johnson's attorney—told the court he was unaware of the arrest. The court thus postponed the sentencing hearing to consider the new information.

Before the court could proceed with sentencing Johnson moved to withdraw his plea. The motion alleged the State previously agreed to recommend a dispositional departure to probation. It further stated that Johnson maintained his innocence and he wished to submit his case to a jury. A while later, Snapp moved to withdraw as Johnson's counsel, reasoning that because he negotiated the plea agreement that was now in dispute, he was a potential witness. At a hearing on Snapp's motion, Stanton told the court that he was "not backing off of [the] agreement" and that he wished to proceed with sentencing. The court noted that "the State is not attempting to withdraw from the agreement" and asked Snapp whether "that change[s] the motion for withdrawal of plea, or are you still opposing on the ground your client does not believe he is guilty?" Snapp told the court that Johnson believed his case should have proceeded to a jury trial. Thereafter, the court permitted Snapp to withdraw and appointed Shannon Crane to represent Johnson.

Following her appointment, Crane filed an amended motion to withdraw plea in which Johnson "acknowledge[d] the State is not recommending prison, but maintain[ed] the State's actions at the sentencing hearing inherently violated the spirit of the plea agreement." The motion also claimed that Johnson had ineffective assistance of counsel prior to acceptance of the plea.

In August 2009, Johnson fled to Arizona. Authorities apprehended Johnson in June 2010 and extradited him to Kansas. Upon his return, Crane negotiated a new plea deal for Johnson in both cases 07 CR 368 and 08 CR 790. Stanton later orally recited the agreement, which was not in writing:

"Mr. Stanton:  . . . My understanding [of the plea agreement] is as follows:  The defendant had filed a motion to withdraw his plea in 07 CR 368. That motion to withdraw his plea will be withdrawn.

". . . The defendant will plead guilty as charged in [08 CR 790] to the one count of possession of methamphetamine with intent to sell . . . . The parties will request that both cases be set over for a special sentencing date, not on a Friday morning—

"The Court:  Okay.

"Mr. Stanton:  —for sentencing. The agreement is that the parties will recommend that the sentences in Case Number 07 CR 368 run concurrent with the sentence in Case Number 08 CR 790. The parties believe based on the defendant's last PSI in 07 CR 368 that he will be criminal history category C. The, the parties will recommend the midrange sentence, which is, I believe, 178 months. Is that correct?

"Ms. Crane:  That sounds correct.

4

"Mr. Stanton:  And that will be the controlling sentence for both cases. Upon successful entry of that, of the plea in 08 CR 790, the state will dismiss Case Number 09 CR 911, which is an agg[ravated] failure to appear case.

"The defendant reserves the right to file a motion for downward dispositional departure. . . . The state at this point in time is taking the position that I will oppose that downward departure subject to anything, of course, that happens between now and the time of sentencing. That might change my, my opinion, but at this point the defendant realizes that my position is going to be that he go and serve that 178 months in the Department of Corrections.

"The Court:  Shannon?

"Ms. Crane:  Yes, Your Honor, I believe that is our, our agreement. At this time I cannot think of anything that [the State] has left off.

. . . .

"Ms. Crane:  We would just ask the court to approve the agreement that we have. We would withdraw our motion to withdraw plea.

"The Court:  So the motion to withdraw plea in 07 CR 368 is withdrawn?

"Ms. Crane:  That's correct, Your Honor.

"The Court:  Is that what you want to do, Chad?

"The Defendant:  Yes, sir.

"The Court:  And you're doing it of your own free will?

"The Defendant:  Yes, sir.

5

"The Court: Okay. I'll, I'll accept that . . . ."

Crane later corrected Stanton that Johnson would plead no contest rather than guilty in 08 CR 790, and the State agreed to Crane's correction. The court then asked Johnson if he wished to plead no contest in 08 CR 790, and Johnson said yes. After explaining and ensuring that Johnson understood the rights he was waiving, the court inquired about Johnson's understanding of the plea:

"The Court: Is it your wish to give up these rights and proceed to a plea of no contest?

"The Defendant: Yes, sir.

"The Court: And the plea agreement has been stated into the record, right?

"Ms. Crane: Yes, Your Honor.

"Mr. Stanton: Yes, sir.

"The Court: And Mr. Johnson, do you understand the agreement?

"The Defendant: Yes, sir.

"The Court: Is it the entire agreement between your lawyer and the state?

"The Defendant: Yes.

"The Court: And do you realize that the court is not bound by that agreement?

"The Defendant: Yes, sir.

6

"The Court: Other than this plea agreement, has anyone promised you anything or threatened you with anything to get you to plea nolo contendere?

"The Defendant: No, sir.

"The Court: Has anyone promised you probation?

"The Defendant: No, sir.

"The Court: And do you know the sentence that you could be given?

"The Defendant: Yes, sir.

"The Court: Have the services of Shannon Crane as your lawyer been satisfactory?

"The Defendant: Yes, sir.

"The Court: Do you have any complaints about the way she has represented you?

"The Defendant: No, sir."

Thereafter, the court accepted Johnson's no contest plea in 08 CR 790, concluding that there was a factual basis for the plea and that it was knowingly, voluntarily, understandingly, and intelligently made.

In October 2010, the district court sentenced Johnson in both cases. In accordance with the plea agreement, the parties asked for the midrange sentences of 68 months in 07 CR 368 and 178 months in 08 CR 790 and requested that the court run the sentences concurrently. Johnson requested a dispositional departure to probation, which the State,

7

pursuant to the stated plea agreement, opposed. Crane did not claim that the State was violating the plea agreement by opposing a dispositional departure. The court denied Johnson's request and sentenced him to a total of 178 months in prison.

The court also ordered Johnson to register as a drug offender. We upheld Johnson's sentences on direct appeal. *State v. Johnson*, No. 105,346, 2012 WL 1253216 (Kan. 2012) (unpublished opinion).

In March 2013, Johnson moved pro se to withdraw his pleas based on Crane's representation. His motion claimed that (1) Crane did not inform him that he would be required to register pursuant to KORA for the remainder of his life; (2) Crane assured him that the court would sentence him to community corrections probation if he entered a no contest plea; and (3) Crane was inexperienced and did not adequately investigate his case.

In November 2013, the district court held an evidentiary hearing on the motion, during which both Johnson and Crane testified. Johnson told the court that Crane was ineffective because she informed him that she had very little experience in criminal law. When asked to explain why he thought she was inexperienced, Johnson stated:

> "Basically stating she never really done a drug trial and didn't, you know, have a lot of experience in that area. She mentioned a couple times she was going to have my prior criminal history thrown or held out of the case and . . . I'd meet her she would say, oh, well, the law has changed. We can't do that. Just stuff like that."

According to Johnson, Crane told him that 07 CR 368 and 08 CR 790 were going to be consolidated, so he would not have a third offense. He further claimed that Crane did not sufficiently investigate his case. When asked to elaborate, Johnson stated that he

was arrested in 2008 with only .29 grams of methamphetamine, which he believed only warranted a conclusion that his possession was for personal use.

Johnson also claimed that Crane promised he would receive probation. However, during direct examination, the following interaction took place between Johnson and his attorney:

"Q. Now, prior to sentencing what—can you enlighten the Court about what kind of assurances, what Ms. Crane told you about the possible outcome of these cases?

"A. Well, I mean she, she told me that the possible outcomes was going to prison. Obviously going, you know. But she said in light of the plea that that wouldn't happen. . . . I made it very clear to her that I would take nothing less. You know, if I wasn't going home, that I wanted to go to trial on all of it."

Crane, on the other hand, testified that she had been practicing criminal law for approximately 27 years. After she was appointed to represent Johnson, Crane stated that she received and reviewed all of the documents in the case and conducted discovery. According to Crane, she met with Johnson and advised him of the law, conceivable defenses, possible sentences, the consequences of his second and third offenses, and his appeal rights. Crane did not recall discussing the consolidation of his cases. When asked about her memory of the second plea agreement, Crane incorrectly recalled that if Johnson withdrew his motion to withdraw plea in 07 CR 368 and pled guilty in 08 CR 790, the State would not oppose probation at sentencing.

Crane testified that after she had negotiated the plea deal but before Johnson fled the state, she met with Johnson, prepared a motion for a departure, and arranged for a witness to testify on his behalf at sentencing. When asked about the effect of Johnson's

9

decision to leave Kansas, Crane responded that "[b]eing gone for over a year made it very difficult for the court to grant Community Corrections."

Notably, neither Johnson nor Crane testified about discussing registration pursuant to KORA.

The court later entered a written order denying Johnson's motion. The court made a finding that pursuant to the plea agreement, Johnson was free to request a departure, but the State would oppose any departure. The district court ultimately ruled that Johnson had failed to show a manifest injustice, holding that he "was represented by competent counsel; defendant was not misled, coerced, mistreated or unfairly taken advantage of; and defendant's plea was knowingly, intelligently, freely and voluntarily entered."

After filing a timely notice of appeal to the Court of Appeals, Johnson argued that (1) his pleas were not understandingly made because he believed his cases were going to be consolidated, he was not informed of the maximum sentence, and he was not informed about lifetime KORA registration; (2) Crane misled him into believing the State would not oppose probation; and (3) Crane was ineffective because she failed to investigate his case and research potential defenses. Johnson contended that he never would have pled had he known he would receive prison time. The Court of Appeals affirmed, holding that Johnson's pleas were understandingly made, he was not misled, and Crane provided competent representation. *State v. Johnson*, No. 111,550, 2015 WL 1124674, at *4-10 (Kan. App. 2015) (unpublished opinion).

We granted his petition for review.

ANALYSIS

On March 29, 2013, Johnson moved to withdraw his pleas. Less than one year earlier, we upheld his sentences on direct appeal. *Johnson*, 2012 WL 1253216, at *1. A mandate was issued in that appeal on April 30, 2012. Any postsentence motion to withdraw a plea must be brought within one year of:

> "(A) The final order of the last appellate court in this state to exercise jurisdiction on a direct appeal or the termination of such appellate jurisdiction; or (B) the denial of a petition for a writ of certiorari to the United States supreme court or issuance of such court's final order following the granting of such petition." K.S.A. 2016 Supp. 22-3210(e)(1).

Johnson's motion to withdraw pleas is timely because he filed it within one year of the final order in his direct appeal.

K.S.A. 2016 Supp. 22-3210(d)(2) states: "To correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw the plea." Courts in this state generally consider the three *Edgar* factors when judging whether a movant has established manifest injustice: "'(1) whether the defendant was represented by competent counsel; (2) whether the defendant was misled, coerced, mistreated, or unfairly taken advantage of; and (3) whether the plea was fairly and understandingly made.'" *State v. Morris*, 298 Kan. 1091, 1100, 319 P.3d 539 (2014) (citing *State v. Edgar*, 281 Kan. 30, 36, 127 P.3d 986 [2006]). "All of the *Edgar* factors need not apply in a defendant's favor in every case, and other factors may be duly considered in the district judge's discretionary decision on the existence or nonexistence of good cause." *State v. Aguilar*, 290 Kan. 506, 513, 231 P.3d 563 (2010); see *State v. Glover*, 50 Kan. App. 2d 991, 996, 336 P.3d 875 (2014) ("[D]istrict courts may consider other relevant factors in order not to 'distort the concept of good cause.'").

11

This court will not reverse the district court's ruling on a motion to withdraw a plea after sentencing absent an abuse of discretion. *State v. Miles*, 300 Kan. 1065, 1066, 337 P.3d 1291 (2014). "A district court abuses its discretion if its decision is (1) arbitrary, fanciful, or unreasonable; (2) based on an error of law; or (3) based on an error of fact." *State v. Moore*, 302 Kan. 685, 692, 357 P.3d 275 (2015). Johnson bears the burden of establishing such an abuse of discretion. *Edgar*, 281 Kan. at 38. "A district court's factual findings are reviewed for substantial competent evidence." *State v. Anderson*, 291 Kan. 849, 855, 249 P.3d 425 (2011). "Appellate courts do not reweigh the evidence or assess witness credibility. Instead, appellate courts give deference to the trial court's findings of fact." 291 Kan. at 855.

Mirroring the *Edgar* factors, Johnson raises three broad reasons why he should be permitted to withdraw his pleas. We consider and reject each in turn.

*Johnson's pleas were understandingly made.*

Johnson offers three reasons why he believes he did not understand his pleas. First, he claims that neither Crane nor the court told him that he would have to register pursuant to KORA for the remainder of his life. Second, Johnson alleges that Crane told him the cases would be consolidated. Third, he points out that the district court never informed him of the maximum sentence. We hold that Johnson cannot carry his burden to show that the district court abused its discretion in denying the motion for these reasons.

Initially, Johnson contends he did not know he would have to register for the remainder of his life. As a result of Johnson's pleas, he had more than one qualifying drug conviction under KORA. See K.S.A. 22-4902(a)(11)(C) (requiring those convicted of K.S.A. 65-4161 to register). Johnson was thus required to register for the remainder of his

12

life. See K.S.A. 22-4906(a)(2) (requiring lifetime registration upon conviction for second qualifying offense). K.S.A. 2016 Supp. 22-3210(a)(2) requires that, before accepting a plea of guilty or nolo contendere in felony cases, the court must inform the defendant of "the consequences of the plea, including the specific sentencing guidelines level of any crime committed on or after July 1, 1993, and of the maximum penalty provided by law which may be imposed upon acceptance of such plea."

Under the version of KORA in effect at the time Johnson committed these crimes as well as when the district court sentenced him, the court was required to inform offenders only when an offender was released on probation, received a suspended sentenced, was sentenced to community corrections, or was released to postrelease supervision. See K.S.A. 22-4905(b)(1). None of these scenarios occurred in Johnson's case, and Johnson makes no argument that more recent versions of KORA should apply retroactively. The district court did not err.

Johnson also makes a bare assertion that Crane never told him about registration. Johnson did not present any testimony to this effect during the evidentiary hearing. Not surprisingly, the district court did not make a ruling on the matter. Thus Johnson cannot carry his burden to establish an abuse of discretion.

Next, Johnson claims that Crane told him that his cases would be consolidated, thereby meaning his possession of methamphetamine with intent to sell charges would only be sentenced as second offenses. Crane testified that she did not recall discussing consolidation with Johnson. Moreover, the plea agreement—which Johnson acknowledged was the entire agreement—did not mention the consolidation of cases. The district court's ruling about this claim is tantamount to a credibility determination—a decision we are ill-suited to question. See *Anderson*, 291 Kan. at 855 (providing that appellate courts do not reweigh evidence or assess witness credibility).

13

Third, Johnson correctly asserts that the district court failed to inform him of his maximum sentence when it accepted his pleas. As previously stated, the court was required to inform Johnson "of the maximum penalty provided by law which may be imposed upon acceptance of such plea." See K.S.A. 2016 Supp. 22-3210(a)(2). While a judge is statutorily required to inform the defendant of the maximum sentence,

> "the error can be deemed harmless and the plea need not be set aside if, upon review of the entire record, the purpose of the statute is otherwise served—*i.e.,* if a defendant is advised of the plea's consequences in a written plea agreement, by defense counsel, or in some other way." *State v. White*, 289 Kan. 279, Syl. ¶ 8, 211 P.3d 805 (2009).

The record contains substantial competent evidence that Johnson understood the range of sentences he could receive. When explaining the plea agreement to the court, Stanton stated that "the parties will recommend the midrange sentence, which is, I believe, 178 months. Is that correct?" Crane then confirmed that this was correct, and Stanton reiterated shortly thereafter that "at this point the defendant realizes that my position is going to be that he go and serve that 178 months in the Department of Corrections."

Moreover, Crane testified at the plea withdrawal hearing that she advised Johnson of the Kansas sentencing grid and guidelines that applied to his cases. She further recalled discussing with Johnson the "escalating penalties" of his second and third offenses.

At the plea withdrawal hearing, an attorney asked Johnson: "And the judge told you when they arraigned you—what your possible sentence was for second possession with intent?" Johnson replied in the affirmative. When Johnson entered the second plea,

14

the court asked him: "And do you know the sentence that you could be given?" Johnson responded, "Yes, sir."

The record clearly demonstrates that Johnson was aware of his maximum sentence, and any error was harmless.

*Johnson was not misled into believing the State would not oppose probation.*

Johnson's second broad contention is that he was misled. Johnson claims that Crane misled him into entering the plea by telling him that the State would not oppose probation as part of the deal. Crane's testimony at the plea withdrawal hearing lends some credence to Johnson's argument. Crane incorrectly testified that the State agreed to not oppose probation. Yet the transcript of the plea hearing plainly contradicts Crane's testimony. When Stanton recited the agreement, he said,

> "The state at this point in time is taking the position that I will oppose that downward departure subject to anything, of course, that happens between now and the time of sentencing. That might change my, my opinion, but at this point the defendant realizes that my position is going to be that he go and serve that 178 months in the Department of Corrections."

The court asked Crane and Johnson if they agreed with Stanton's rendition of the plea deal, and both affirmed. The court later directly asked Johnson if anyone had promised him probation to induce his plea, and he said no.

The district court's findings reflect the plea agreement as agreed to at the time by all present, including Johnson. The court's conclusion that Johnson was not misled is supported by substantial competent evidence.

15

*Crane was not ineffective.*

Finally, Johnson argues that Crane's performance fell below an objective standard of reasonableness. He claims prejudice resulted because—but for these errors—he would have insisted on going to trial. He cites *State v. Solomon*, 257 Kan. 212, Syl. ¶ 7, 891 P.2d 407 (1995), for the rule that "[i]n considering the entry of a plea of guilty or nolo contendere, defense counsel has an obligation to advise the defendant as to the range of permissible penalties and to discuss the possible choices available to the defendant."

"When a postsentence motion to withdraw a plea alleges ineffective assistance of counsel, the constitutional test for ineffective assistance must be met to establish manifest injustice." *State v. Kelly*, 298 Kan. 965, 969, 318 P.3d 987 (2014). That test asks: "(1) whether the attorney's performance fell below an objective standard of reasonableness and (2) whether there is a reasonable probability that, but for the attorney's errors, the result of the proceeding would have been different." 298 Kan. at 969. There is a "strong presumption" that counsel provided "'adequate assistance'" and "'made all significant decisions in the exercise of reasonable professional judgment.'" 298 Kan. at 970 (quoting *Chamberlain v. State*, 236 Kan. 650, 655, 694 P.2d 468 [1985]). Prejudice means "a reasonable probability that, but for the deficient performance, the defendant would have insisted on going to trial instead of entering the plea." 298 Kan. at 970. A reasonable probability is a "'probability sufficient to undermine confidence in the outcome.'" 298 Kan. at 970 (quoting *Chamberlain*, 236 Kan. at 657).

Aside from Johnson's testimony at the plea withdrawal hearing, we cannot locate anything in the record that supports his contentions. At the plea withdrawal hearing, Crane testified that she advised Johnson of the law, sentencing guidelines, plea offers, facts in the police reports, and consequences of his second and third offenses. She explained that she talked with Johnson about possible defenses "extensively" and "at

length" because he wanted to take the cases to trial. For example, in case 07 CR 368, Johnson proposed a defense that he was staying with his girlfriend and the drugs were not his. Crane discussed with Johnson the likelihood that the jury would believe such a defense.

Johnson claims that in case 08 CR 790 he possessed substantially less methamphetamine than is normal for distribution, so Crane should have investigated a defense related to the severity of the crime. At the plea withdrawal hearing, Crane testified she conducted discovery and plea negotiations in case 08 CR 790. When asked by the State whether there was a "complicated factor," Crane said:  "The police reports and [Johnson] confirmed that he told the police officer that I'm not using this. I'm just taking it to someone to get money from them." She further testified that she discussed defenses with Johnson in case 08 CR 790 but could not recall the specifics.

At his plea hearing, the court asked Johnson, "Have the services of Shannon Crane as your lawyer been satisfactory?" Johnson said yes.

Under the circumstances of this case, Crane's representation did not fall below an objective standard of reasonableness. Rather, given the difficult facts of the case, she did an admirable job of persuading the State to agree to concurrent sentences.

We can discern no manifest injustice.

Affirmed.