NOT DESIGNATED FOR PUBLICATION

No. 119,466

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

JULIOUS LEE GOODRIDGE,
*Appellant*.

MEMORANDUM OPINION

Appeal from Riley District Court; GRANT D. BANNISTER, judge. Opinion filed May 17, 2019. Affirmed.

*Kai Tate Mann*, of Kansas Appellate Defender Office, for appellant.

*John A. Griffin*, legal intern, *James W. Garrison*, assistant county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before ARNOLD-BURGER, C.J., PIERRON AND MALONE, JJ.

PER CURIAM: Julious Lee Goodridge appeals the district court's denial of his motion to withdraw a plea.

FACTS

In August 2016, the State charged Goodridge with five counts of distribution of methamphetamine. Throughout the pendency of the case, Goodridge discussed the possibility of plea negotiations with defense counsel, Lora Ingels. In November 2016,

Ingels discussed a plea offer with Goodridge in which he would plead guilty or no contest to counts 2 and 4: one count of distribution of at least 3.5 grams but less than 100 grams of methamphetamine within 1,000 feet of school property, a severity level 1 drug felony; and one count of distribution of at least 1 gram but less than 3.5 grams of methamphetamine within 1,000 feet of school property, a severity level 2 drug felony, respectively. In return for his plea, the State offered to dismiss the remaining three charges against Goodridge. The parties agreed to recommend the sentences for both counts to run concurrently and all other sentencing options were open for argument. Goodridge told Ingels he wanted to accept the deal.

In December 2016, Goodridge bonded out of jail and Ingels lost contact with him until the pretrial hearing on February 21, 2017. Before the hearing, Ingels and Goodridge reviewed the plea deal in detail and he confirmed he wanted to accept the offer. The district court continued the hearing for the following day so Ingels could prepare the plea agreement and acknowledgement of rights.

The next day, Ingels met with Goodridge before the hearing and reviewed the plea agreement, acknowledgement of rights, and duty to register. Ingels reviewed each document in detail and discussed sentencing possibilities with Goodridge. She informed Goodridge there was only a slim possibility that the district court would grant him probation, but she agreed to request it. She explained that both charges in the plea were presumptive prison offenses and the State would recommend he go to prison. Goodridge signed the acknowledgement of rights and plea agreement.

Before the district court, Goodridge confirmed he had reviewed all of the documents, discussed them with Ingels, and signed them. The court explained the constitutional rights Goodridge was waiving by accepting the plea offer and Goodridge confirmed he wanted to proceed. The court informed Goodridge that the sentencing range for count 2 was 138 to 204 months' imprisonment, a maximum fine of $500,000, and 36

months' postrelease supervision. The sentencing range for count 4 was 92 to 144 months, a maximum fine of $500,000, and 36 months' postrelease supervision. The court advised Goodridge that upon a conviction of a severity level 1 or 2 drug felony, the law presumed a sentence of imprisonment, not probation, and that for a sentence of probation, the district court had to find substantial and compelling reasons existed. The court clarified that a prison sentence was likely and presumed. Goodridge denied any promise or inducement to enter into the plea or that anybody had forced or threatened him. He agreed he was entering the plea freely and voluntarily after having adequate opportunity to discuss the charges and all other questions with Ingels. Goodridge stated he had taken medication for blood pressure, his prostate, and Abilify but no medications that affected his ability to process information or understand what was going on.

After the district court was satisfied Goodridge understood what was going on, Goodridge pled no contest to counts 2 and 4. The State provided the following factual basis for the offenses:

> "Your Honor, had this matter proceeded to trial the State would have offered evidence to show that in the Summer of 2016, Riley County Police Department SIU was investigating the distribution of methamphetamine. One of the suspects believed to be distributing methamphetamine was the defendant, Julious Goodridge. Officer Amy Wallace, who was acting in an undercover capacity, was able to purchase 2 grams of KBI confirmed methamphetamine on July 21st, 2016 from the defendant. That particular transaction was at the 300 block of South 15th Street within Manhattan, Riley County, Kansas, which was also within 1000 feet of Theodore Roosevelt Elementary School. On August 24th, 2016, Officer Amy Wallace, again acting in an undercover capacity, was able to purchase 7.72 grams of KBI confirmed methamphetamine from the defendant. This transaction occurred in the 200 block of South 15th Street within Manhattan, Riley County, Kansas, and was within 1000 feet of Theodore Roosevelt Elementary School."

The district court found Goodridge was "alert and intelligent, underst[ood] the nature of the charges, appreciate[d] the consequences of pleading no contest," and the

3

decision to plead no contest was "freely, voluntarily, and intelligently made." The court further found Goodridge was "mentally responsible at [that] time and that [he was] competent to enter the plea."

Before sentencing, Goodridge had completed a psychological evaluation with Dr. Robert W. Barnett in hopes that the evaluation would provide a solid argument for a dispositional departure. Dr. Barnett found Goodridge was illiterate; appeared to suffer from major mental disorder or defect, such as psychotic disorder; had cognitive impairment; and had substance abuse disorder. He concluded Goodridge would be a good candidate for community placement with support of mental health services if he could remain sober.

The district court sentenced Goodridge to 178 months' imprisonment with 36 months' postrelease supervision and ran the two sentences concurrently.

On May 23, 2017, Goodridge filed a direct appeal, case No. 117,698, challenging the use of his criminal history to determine the presumptive sentence under the Kansas Sentencing Guidelines Act. On February 2, 2018, the Kansas Supreme Court granted Goodridge's motion for summary disposition and dismissed his appeal because a presumptive sentence is not subject to challenge on appeal.

On March 8, 2018, Goodridge filed a pro se motion to withdraw his plea in the district court. He claimed his plea had not been freely, fairly, and understandably made and he had received ineffective assistance of trial counsel.

Goodridge contended his plea was not knowingly or voluntarily made as the district court did not inquire of him about the facts of the case and there was no showing that his plea satisfied the charges. He claimed the court did not comply with all due process requirements as outlined in K.S.A. 2018 Supp. 22-3210 and so the plea resulted

4

in manifest injustice. He also asserted the State had failed to explain what elements it would have had to have proven if the case would have gone to trial and he could not have realized what he was admitting to without knowing the elements.

At the motion hearing, Goodridge testified to three arguments for his plea being unknowingly and involuntarily made: (1) He believed he was pleading to a lesser charge; (2) he did not understand the elements of the charged crimes; and (3) he could not have fully understood what was going on and what the consequences were because of his mental health diagnoses and medications.

Goodridge testified that he believed he was pleading to a lesser charge. He did not know that the sale of methamphetamine and the distribution of methamphetamine were the same thing. He thought the plea was to "somethin' like sales" and his confusion was in his belief that he was pleading to a lesser charge so that he would be sentenced to probation. He claimed he was doing well on probation when he picked up these charges and so he assumed he would just remain on probation. The record shows Goodridge was on felony bond supervision for possession of hydrocodone when he committed the crimes at hand. However, it is unclear at what point during the pendency of this case he was sentenced to probation in the other case. Goodridge only briefly touched on his argument that his plea was unknowing because he did not understand the elements of the charged crimes. He testified that he still did not know what the elements were and expressed that he did not know what the word "elements" meant in general.

Goodridge testified he did not fully comprehend the circumstances of the plea at the time because he felt rushed to accept the offer and had been taking several medications. He stated he had been on eight different medications at one point and, at the time of the plea, he had started new medications and his wife had recently passed away. When asked to summarize why the district court should have allowed him to withdraw

his plea, he stated:

> "Okay. First of all, I didn't know exactly what was goin' to happen, what was goin' on. Like I said my wife just passed away, I just started—just tryin' to start on some new medication and then goin' through jury trial and I didn't know if that was goin' to be the best way out for me or the easy way out for me. I was confused, to be totally honest. I didn't know what was my best outlet to go, so I just said just get it done with. Do you know what I mean? I didn't mean that I was pleadin' guilty or no contest to what I received. I thought I was goin' to get probation. I think the probation officer and everybody else thought I was goin' to get probation as well. It took me by surprise. I knew there was a chance that I was goin' to go to prison, but I didn't know for how long or for what, you know. You know due to the medication that I was takin' and just tryin' to get on the level, I was rushed. I was plum rushed."

During cross-examination, Goodridge agreed that he had "pretty much" told the truth during the plea colloquy, he had not expressed confusion to Ingels, and he had told the district court he understood the plea and possible consequences.

Ingels testified she was aware of Goodridge's mental health issues from early in the case and it was part of the discussion about whether he should accept the plea offer. She claimed she never had a concern that Goodridge would not have been able to help his defense had the case gone to trial. Her concern was that the State had a recording of Goodridge selling methamphetamine to an undercover officer, so his defenses were limited. When she and Goodridge discussed the State's case against him, he only responded that he did not know undercover Officer Wallace was an officer. Ingels insisted she reviewed the acknowledgement of rights and plea offer in detail, using basic terms to ensure Goodridge understood. She testified that when she first met with Goodridge he wanted to withdraw his plea in his other case before sentencing because he had not understood some aspects of the plea agreement. In that plea, the State's agreement to recommend probation hinged on Goodridge staying out of trouble between

6

the plea and sentencing hearings. However, in that time, the State charged him in the current case. Ultimately, Goodridge proceeded to sentencing and Ingels concluded the desire to withdraw his plea was not because he did not understand but because he understood the State was no longer bound to recommending probation and he was facing incarceration.

The district court noted that the written motion was well written and organized, but testimony showed that Goodridge did not understand what it contained. In his testimony, Goodridge focused on sentencing more than the arguments in the motion. The court reviewed the transcript from the plea hearing, including the court's review of the plea agreement and acknowledgement of rights, noting that Goodridge agreed that he understood everything in the documents; he had enough time to discuss the plea with Ingels; and he had entered the plea freely, knowingly, and voluntarily. The court noted that it did not make its determination only from the motions hearing, but also from what had taken place in the plea hearing, which was reflected in the transcript. The court considered the issues presented and the statutory framework in K.S.A. 2018 Supp. 22-3210, which required a showing of manifest injustice.

Although the district court reviewed the three factors in *State v. Edgar*, 281 Kan. 30, 36, 127 P.3d 986 (2006), it determined Goodridge's focus was on the third factor: whether the plea was fairly and understandingly made. The court pointed out Ingels testified that she went well beyond leaving it to Goodridge to read the documents she prepared for the plea. Instead, she explained each point, reviewed the charges with him, explained the requirements—which the court understood to be the elements, reviewed the State's burden of proof, explored defenses, and consulted with Goodridge throughout the process. The court also noted that Goodridge had 14 convictions before this one. While most were several years before this case, it showed he had been through the negotiation and court process at least a dozen times before. In Goodridge's most recent case, sentencing was pending when the State charged him in the current case.

7

The district court found no arguments in the motion or testimony to support granting Goodridge's plea withdrawl motion. The court emphasized that although it was not in the written motion, Goodridge's testimony showed that his disappointment was in the failed departure motion and his resulting prison sentence. The court noted that no adequate basis existed to grant the departure motion.

Goodridge appeals.

ANALYSIS

Goodridge contends his plea was not knowingly or understandingly made because of his medications, underlying mental health issues, and cognitive disabilities. He claims his confusion with sales and distribution and not knowing what "elements" are demonstrated his lack of understanding. He asserts he did not understand the consequences of the plea as he believed everybody involved thought he was going to receive probation, not prison.

Goodridge claims his diagnoses, including paranoid schizophrenia, prevented him from appreciating the nature of his crimes and the consequences. He points out that Dr. Barnett concluded his intellectual functioning was in the borderline to mildly mentally retarded range and he appeared to suffer from a major mental disease or defect such as psychotic disorder and other cognitive impairment. Also, at the time of the plea, he was going through medication adjustment, which made him confused and unable to understand his circumstances. He claims that these issues, coupled with his wife's death, made him confused and unable to understand fully the ramifications of his plea when he was rushed to accept it.

8

*Standard of Review*

"To correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw the plea." K.S.A. 2018 Supp. 22-3210(d)(2). The Kansas Supreme Court has determined "manifest injustice" means "'obviously unfair'" or "'shocking to the conscience.'" *White v. State*, 308 Kan. 491, 496, 421 P.3d 718 (2018). When determining whether a defendant has shown the manifest injustice necessary to withdraw a plea after sentencing, a district court considers: (1) whether the defendant was represented by competent counsel; (2) whether the defendant was misled, coerced, mistreated, or unfairly taken advantage of; and (3) whether the plea was fairly and understandingly made. *Edgar*, 281 Kan. at 36; see *State v. Johnson*, 307 Kan. 436, 443, 410 P.3d 913 (2018).

Generally, an appellate court will not disturb a district court's denial of a postsentence motion to withdraw a plea absent an abuse of discretion. 307 Kan. at 443. A judicial action constitutes an abuse of discretion if (1) no reasonable person would take the view adopted by the trial court; (2) it is based on an error of law; or (3) it is based on an error of fact. *State v. Marshall*, 303 Kan. 438, 445, 362 P.3d 587 (2015).

Goodridge does not contest the first *Edgar* factor—whether he was represented by competent counsel in his plea. Although he claimed ineffective assistance of counsel in his motion, the district court denied the allegations and Goodridge does not contest Ingels' representation in this appeal. Regarding the second *Edgar* factor, Goodridge asserts he was rushed into accepting the offer, which could show he was coerced into accepting the plea without giving it adequate consideration. But Goodridge provides no guidance as to how he was rushed when the evidence showed he discussed the plea offer with Ingels in November 2016, then again on the date the pretrial hearing had been scheduled, and in further detail before the hearing the next day. He had three months to consider the plea offer. He was not coerced or rushed into accepting the plea.

9

The bulk of Goodridge's arguments rests in his assertion that the plea was not fairly and understandingly made—the third *Edgar* factor. He asserts several factors prevented him from understanding the circumstances and consequences of the plea. Goodridge contends he did not understand the charges or their elements and he could not understand the deal he was entering into because of his mental health diagnoses and medication changes. He also claims Ingels rushed him into taking his plea.

Goodridge's assertions contradict his statements to the district court at the plea hearing. The only support for his contentions beyond his testimony is Dr. Barnett's evaluation, provided to the court for sentencing. Even before the evaluation, the district court addressed the concerns about Goodridge's illiteracy, intellectual functioning, and mental health diagnoses through its colloquy with him.

Before accepting Goodridge's plea, the district court ensured he had reviewed the acknowledgement of rights and plea agreement forms and signed the forms. The court then reviewed the constitutional rights Goodridge would have to waive to enter the plea. After Goodridge agreed that he wished to waive his rights, the court informed him of the sentencing ranges for the charges he was pleading no contest to and explained:

> "Mr. Goodridge, upon a conviction of a Severity Level 1 and/or 2 Drug Level Felony, the law presumes that you will be sentenced to prison and that you will not be given probation. While the Court has the power to give you probation, you must understand that the Court cannot do so unless there are substantial and compelling reasons to the satisfaction of myself as the sentencing judge. In other words, a sentence to prison is the likely sentence in a presumed prison case."

Goodridge agreed that he understood the presumed sentence. He then informed the court he was not promised anything in return for the plea and was not induced, forced, or

10

threatened into entering the plea. Goodridge confirmed that his plea was free and voluntary and he had adequate opportunity to consult with Ingels and discuss the charges.

On the plea agreement form, Goodridge wrote that the only medications he took were for his blood pressure, prostate, and Abilify. At the plea hearing, he denied that his medications had any effect on his ability to understand the proceedings. He then denied there was any reason the district court should not accept his plea. After the State provided a factual basis for the charges, the court found:

> "Mr. Goodridge is alert and intelligent, understands the nature of the charges, appreciates the consequences of pleading no contest, and that you waive the constitutional rights of a defendant that I have already gone over. The Court further finds that your decision to plead no contest is freely, voluntarily, and intelligently made. You've had the advice of counsel—of a lawyer and that you are mentally responsible at this time and that you are competent to enter the plea."

The court noted that it would have been concerned had it relied on Goodridge's reading of the documents alone, but he had the benefit of counsel, without whom he likely would not have understood what his rights were and what the plea constituted.

Goodridge's misunderstanding that the sale of methamphetamine and the distribution of methamphetamine were different charges does not support his conclusion that he did not understand the plea or its consequences. Because sale and distribution are synonymous, and he knew he pled to the sale of methamphetamine, he knew what conduct he agreed the State could have proven in trial. Goodridge contends he thought he was pleading to a lesser charge. The State originally charged him with five counts of distribution of methamphetamine, three of which were severity level 1 drug felonies. He pled to only one level 1 drug felony and one level 2 drug felony and the State dismissed the remaining three charges. Though the charges were still severe, he received a significant benefit of not having multiple level 1 drug felonies and having the State

11

recommend concurrent sentencing rather than consecutive. Ingels testified that she reviewed the risk of consecutive sentences from trial and the potential benefits of the plea with Goodridge before he accepted the offer.

In *State v. DeAnda*, 307 Kan. 500, 507, 411 P.3d 330 (2018), the Kansas Supreme Court affirmed that a plea was made freely, voluntarily, and understandingly when the district court informed the defendant of the nature of the charges and of his constitutional rights he was waiving, informed him of the maximum penalty, and the hearing transcript showed the defendant entered the plea understandingly and voluntarily. Here, the district court conducted a thorough colloquy, advising Goodridge of the nature of his charges, his rights he was waiving, the maximum penalty, and the transcript supports that Goodridge entered the plea knowingly and understandingly.

Also, like *DeAnda*, the same district court judge who conducted the plea colloquy also conducted the motion hearing. See 307 Kan. at 507-08; *State v. Schaefer*, 305 Kan. 581, 595, 385 P.3d 918 (2016) ("The district court had the opportunity to view Schaefer's affect and body language and assess whether he was truthfully and unequivocally answering those questions."). Because the court observed Goodridge's affect and body language, assessing his understanding at the plea hearing as well as the motion hearing, and maintained that Goodridge entered the plea "freely, voluntarily, and intelligently," which the record supports, the district court did not abuse its discretion.

Finally, Ingels' testimony supports the district court's finding under the third *Edgar* factor about whether the plea was fairly and understandingly made. As the district court pointed out in its ruling, Ingels testified that she went beyond leaving it to Goodridge to read the documents she prepared for the plea. Instead, Ingels reviewed the charges with Goodridge, explained the elements of the crimes to him, reviewed the State's burden of proof, explored defenses with him, and consulted with Goodridge throughout the case. Ingels testified that she was aware of Goodridge's mental health issues from early in the

12

case and it was part of the discussion about whether he should accept the plea offer. She testified that she was never concerned about whether Goodridge would be able to help his defense had the case gone to trial. Her concern was the fact that the State had a recording of him selling methamphetamine to an undercover officer, so his defenses were limited.

Ingels' testimony controverted many of Goodridge's claims that he did not understand the circumstances and consequences of his plea. It appears from the district court's ruling that the court found Ingels' testimony to be more credible than Goodridge's testimony. Appellate courts do not reweigh evidence, resolve evidentiary conflicts, or make witness credibility determinations. *State v. Chandler*, 307 Kan. 657, 658, 414 P.3d 713 (2018). Goodridge failed to show that the withdrawal of his plea was necessary to correct manifest injustice. As a result, we conclude the district court did not err in denying Goodridge's motion to withdraw his plea.

Affirmed.