NOT DESIGNATED FOR PUBLICATION

Nos. 118,998
119,000
119,001
119,162

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

ERNEST L. GAINES,
*Appellant*.


MEMORANDUM OPINION

Appeal from Sedgwick District Court; DAVID J. KAUFMAN, judge. Opinion filed July 5, 2019. Affirmed.

*Carl F.A. Maughan*, of Maughan Law Group LC, of Wichita, for appellant, and *Ernest Gaines*, appellant pro se.

*Matt J. Maloney*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellant.


Before BUSER, P.J., PIERRON and BRUNS, JJ.


PER CURIAM: Ernest L. Gaines appeals his multiple convictions in four consolidated cases. On appeal, Gaines contends that the district court erred when it denied his motion to withdraw his plea. Gaines also asserts that the district court failed to properly investigate a possible conflict between him and his attorney. Finally, Gaines

1

contends that the district court erred when it denied his motion to add certain documents to the record. For the reasons set forth in this opinion, we affirm.

FACTS

This consolidated appeal involves four criminal cases filed in Sedgwick County District Court. Although there was no plea agreement, Gaines entered guilty pleas on all of the following charges on February 12, 2015:

*Case No. 14-CR-2623*

One count of burglary in violation of K.S.A. 2014 Supp. 21-5807(a)(2), (c)(1)(B) and one count of theft after a prior conviction in violation of K.S.A. 2014 Supp. 21-5801(a)(1), (b)(6).

*Case No. 14-CR-2774*

Four counts of burglary in violation of K.S.A. 2014 Supp. 21-5807(a)(2), (c)(1)(B), seven counts of theft after a prior conviction in violation of K.S.A. 2014 Supp. 21-5801(a)(1), (b)(6), and one count of burglary in violation of K.S.A. 2014 Supp. 21-5807(a)(3), (c)(1)(C).

*Case No. 14-CR-2805*

One count of theft in violation of K.S.A. 2014 Supp. 21-5801(a)(4), (b)(3).

*Case No. 14-CR-2918*

One count of unlawfully tampering with electronic monitoring equipment in violation of K.S.A. 2014 Supp. 21-6322(a).

On May 18, 2015, Gaines filed a motion seeking a dispositional departure, which was subsequently denied by the district court. Two days later, the district court held a sentencing hearing. At the hearing, Gaines asked the district court to impose restitution and probation. After considering the recommendations, the district court sentenced Gaines to 29 months of incarceration in 14CR02623, to 29 months in 14CR02774, to 13 months in 14CR02805, and to 38 months in 14CR02918. The district court imposed these sentences to run consecutively for a total of 109 months.

Gaines timely appealed on May 27, 2015. After filing his notice of appeal, Gaines filed a pro se "Motion to Withdraw Plea Due to Ineffective Assistance of Counsel" in all four cases. On September 16, 2015, the district court denied Gaines' motion. In doing so, the district court explained:

"[T]he appellate courts now having jurisdiction of [Gaines'] four cases, this Court declines to exercise concurrent jurisdiction of [Gaines'] cases, absent an order by the appellate courts to entertain [Gaines'] motion.

"As such, [Gaines'] motion is dismissed."

The four cases were consolidated for appeal on October 7, 2015. However, the Kansas Supreme Court took the appeal. In an order issued on March 21, 2016, our Supreme Court summarily affirmed Gaines' sentences under Supreme Court Rule 7.041A(d) (2015 Kan. Ct. R. Annot. 67). A mandate was issued on June 29, 2016.

On August 12, 2016, Gaines filed a "Motion to Withdraw Guilty Plea Due to Ineffective Assistance of Counsel Request to Vacate/Set Aside Sentence Pursuant to K.S.A. 22-3210(d)" in district court. In the motion, which is the subject of this appeal, Gaines requested "an order allowing him to withdraw his plea as provided for in K.S.A. 22-3210 and allow him to enter a not guilty plea and have the matter set for jury trial in

3

accordance with U.S. Supreme Court finding *Missouri v. Frye*[,] 132 S. Ct. 1399 (2012)[.]"

The district court held an evidentiary hearing on the motion to withdraw plea on March 14, 2017. At the hearing, Gaines testified that prior to the preliminary hearing in the underlying cases, he and his trial attorney, Quentin Pittman, engaged in some plea negotiations with the State. Although the record is unclear regarding the specifics, the State evidently indicated a willingness at one point to agree to recommend an 85-month sentence with Gaines being free to argue for probation. According to Gaines, prior entering his plea, Pittman told him "that there was a 61-month plea written agreement that was no longer available." Under the terms of 61-month offer, Gaines would not have been able to argue for probation.

Although Gaines admitted that he agreed to plead guilty even though there was "no plea agreement" in place, he testified that he never made a decision to accept or reject any plea deals offered by the State. Gaines admitted that his memory was "fuzzy" on the subject. However, he indicated that he believed that Pittman told him that he would receive a total sentence of 61 months. He also suggested that there was some discussion involving the use of an ankle monitor once he was released. Gaines estimated that he spoke with Pittman regarding plea negotiations four times.

When the district court noted that Gaines signed an "Acknowledgment of Rights and Entry of Plea," Gaines replied that he could not "say [he] agreed with that." Nevertheless, he acknowledged that he did not have a plea agreement. On cross-examination, Gaines testified that he told Pittman that he wanted probation and to pay restitution in any plea. Then, this exchange occurred concerning Gaines and the prosecutor in the case, Assistant District Attorney Avery Elofsson:

"Q: Okay. And based on what you heard from Mr. Elofsson at the sentencing hearing about the possibility of there being other deals, is that what is causing you to believe that Mr. Pittman didn't present other deals to you?

"A: Well, yeah, that's the first indication that [Elofsson] said that there were in fact other ones, and he said he wasn't gonna argue that there—that there were not, apparently. That's what he said.

. . . .

"A: And then [Elofsson]'s the one that brought it to light that there were other offers.

"Q: Okay. Do you know what the content of those offers were?

"A: He said there was something that was offering probation, free to argue, something for 85 months, and then he said something to the effect that there were some transmitted in email as well and some were reduced to paper.

"Q: And this was at the sentencing hearing?

"A: That's correct.

"Q: Okay. Isn't it true that you told Mr. Pittman that you wouldn't accept a deal that included prison time instead of probation?

"A: That is not true."

Pittman also testified at the hearing. He indicated that he spoke with Assistant District Attorney Elofsson and "attempted to work something out." However, the negotiations were unsuccessful. According to Pittman, Gaines told him "his number one goal was he wanted to get probation." Pittman explained to the district court that due to Gaines' past criminal history, lack of an alibi, and how "forthcoming" Gaines was with his participation in the crimes, he did not believe that he had "great bargaining power."

Pittman also explained that the assistant district attorney offered a plea deal for "five years in prison" because "the cops wanted [Gaines] off the street" due to his long criminal record. According to Pittman, Elofsson told him that "he was not going to give [Gaines] probation, and that was his plea offer." Pittman then attempted to discuss the matter with Elofsson's superior, who also told him that "too many cops [were] complaining about [Gaines], and that's it. We're not gonna make another deal."

5

Pittman testified that he presented the "only plea offer [they] got" to Gaines. This offer was reduced to writing. Pittman further testified that after showing Gaines the written plea offer, Gaines took the position that "he wasn't gonna enter a plea unless it was a plea for probation." When asked if Gaines rejected the offer, Pittman testified:

"A: Yes. He absolutely, categorically was not going to accept their plea offer of 61 months. And in fact, after he rejected it, as I was leaving the jail, I happened to run into Robert Short [, Elofsson's superior,] and had a brief conversation with him about that, . . . I was trying to get the best deal I could for Mr. Gaines.
"Q: Okay. That conversation . . . did that affect how you proceeded in the case?
. . . .
"A: Yes, it did.
"Q: Okay. What did—what effect did it have on how you proceeded?
"A: We were not gonna get another plea offer."

After Gaines rejected the deal, Pittman suggested to Gaines that he consider entering a plea without an agreement. In other words, Pittman suggested that Gaines accept responsibility and "throw [himself] on the mercy of the court." Pittman testified that this strategy worked in another case before the same district court judge. Pittman also explained that he discussed the options with Gaines on several occasions.

Specifically, Pittman testified that he discussed three options with Gaines: (1) the option of the 61-month deal, assuming the district court would follow the recommendation; (2) pleading with no deal, which could potentially result in probation, or; (3) not enter a plea at all and go to trial. According to Pittman, Gaines chose the option to plead without an agreement in the hope of getting probation. In addition, Pittman testified that "[t]here was no other deal offered ever to us except the written plea offer that I presented to my client." Pittman also denied ever rejecting a deal without asking Gaines' permission to do so.

6

On April 18, 2017, the district court denied Gaines' motion, finding that he "failed to meet the requirements of *Frye* as it relates to, at minimum, showing there is a reasonable probability that the trial court would have implemented the plea offer." The district court explained that under *Frye*

> "defense counsel has the duty to communicate formal prosecution offers to accept a plea on terms and conditions that may be favorable to the accused. To show prejudice where a plea offer has lapsed or been rejected because of counsel's deficient performance, the defendant must demonstrate a reasonable probability both that they would have accepted the more favorable plea offer had they been afforded effective assistance of counsel and that the plea offer would have been entered without the prosecution's canceling it or the trial court's refusing to accept it, if the trial court had the authority to exercise that discretion under state law."

The district court found that in this case, there had been a 61-month controlling sentence plea offer in which Gaines would not have been able to argue for probation. In addition, the district court found that there was an 85-month plea offer, where Gaines would have been able to argue for probation. The district court found that the 85-month offer was more favorable than the 61-month offer and that Pittman "failed to communicate [this offer] to Mr. Gaines."

Nevertheless, the district court found that Gaines failed to meet his burden of proving that there was a reasonable probability that the district court would have granted probation or imposed a sentence of 85 months or less. In reaching these conclusions, the district court found:

1. "Mr. Gaines did not want prison time. He wanted probation to be granted and was willing to pay restitution."
2. "Mr. Gaines' number one goal is that he wanted to get probation."
3. "[T]he State was not going to recommend probation."

7

4.  "Mr. Gaines was not going to enter a plea pursuant to a plea bargain unless it was a plea for probation."

5.  "Mr. Gaines' position was that he would not enter a plea with the State of Kansas unless they were recommending probation. So there never was a plea offer communicated to Mr. Pittman where the State was recommending probation. So[,] assuming that Mr. Gaines would have accepted the first plea offer, which was a State's recommendation of 85 months with the defense being free to argue for probation, assuming he would have accepted that without finding so, the Court that imposed the sentence, which was me, would not have granted probation . . . and would not have imposed a sentence for 85 months or lower."

Gaines filed the present appeal on April 19, 2017. The following month, Gaines filed a "Motion to Amend and Supplement Pleadings for Amended and Additional Findings." The district court denied this motion on May 8, 2017, noting that Gaines "had his opportunity at his evidentiary hearing on March 4, 2017 to present any and all evidence that he and his counsel deemed relevant. . . . To the extent that [Gaines'] motion is procedurally permissible (if at all) pursuant to K.S.A. 60-260(b), none of the grounds listed therein apply. . . . [Gaines'] appellate counsel should pursue this additional adverse ruling to [Gaines] at the appellate level."

Thereafter, Gaines filed another pro se notice of appeal for "all adverse rulings, findings of fact and conclusions of law rendered against him May 8th, 2017[.]" The four cases were later consolidated for appeal by this court. Gaines' appellate counsel filed a brief on his behalf in which it was asserted that the district court abused its discretion in denying the motion to withdraw his plea. Subsequently, Gaines was granted leave to file a pro se supplemental brief that has also been considered by this court. In his supplemental brief, Gaines asserted that the district court also abused its discretion by failing to inquire further about an alleged conflict of interest as well as by denying his motion to amend and supplement pleadings.

8

*Denial of Motion to Withdraw Plea*

The first issue presented is whether the district court erred when it denied Gaines' motion to withdraw his plea. In support of his contention that the district court abused its discretion, Gaines argues that (1) his trial counsel "provided inadequate advocacy"; (2) his "[p]lea was not fairly and freely made"; (3) he "was misled, coerced and taken advantage of" in entering his plea; and (4) his plea was not voluntarily and understandably made.

K.S.A. 2018 Supp. 22-3210(d)(2) provides: "To correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw the plea." Where there has been an evidentiary hearing, as in the present case, we will not disturb a district court's denial of a postsentence motion to withdraw plea absent an abuse of discretion. *State v. Johnson*, 307 Kan. 436, 443, 410 P.3d 913 (2018). Judicial discretion is abused only when (1) no reasonable person would take the view adopted by the trial court; (2) the district court based its decision on an error of law; or (3) the district court based its decision on an error of fact. *State v. Marshall*, 303 Kan. 438, 445, 362 P.3d 587 (2015). The party asserting the trial court abused its discretion bears the burden of showing such abuse of discretion. *State v. Robinson*, 303 Kan. 11, 90, 363 P.3d 875 (2015), *disapproved in part on other grounds by State v. Cheever*, 306 Kan. 760, 402 P.3d 1126 (2017).

In support of his argument that his trial counsel provided ineffective counsel by not telling him about an 85-month plea offer, Gaines cites *Missouri v. Frye*, 566 U.S. 134, 132 S. Ct. 1399, 182 L. Ed. 2d 379 (2012), and *Lafler v. Cooper*, 566 U.S. 156, 164, 132 S. Ct. 1376, 182 L. Ed. 2d 398 (2012). In *Lafler*, the United States Supreme Court held:

"In these circumstances [where the ineffective assistance of counsel resulted in the defendant rejecting a plea offer] a defendant must show [(1)] that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (*i.e.*, that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), [(2)] that the court would have accepted its terms, and [(3)] that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and the sentence that in fact were imposed." *Lafler*, 566 U.S. at 164.

Here, the district court found that there were two plea offers made by the State. One was an offer for a "61-month controlling sentence" with no ability to argue for probation and the other was for a recommendation by the State for "85 months and [Gaines] would be free to argue for probation." The district court also found that the 85-month offer was more favorable to Gaines than the 61-month offer because he would have been free to argue for probation at sentencing. In addition, the district court found that trial counsel "failed to communicate that to . . . Gaines." Thus, it appears that Gaines has met the first prong of the *Lafler* test.

In its findings, the district court skipped from the first prong of the *Lafler* analysis to the third prong. In concluding that Gaines failed to meet the third prong of the analysis, the district court stated:

"Skipping a step in the analysis at this juncture but going to the final prong, did . . . Gaines meet his burden that there was a reasonable probability that the trial court basically would have either granted probation or imposed a sentence of 85 months or lower? No. . . . [Gaines] failed to meet [his] burden.

. . . .

". . . Mr. Gaines did not want prison time . . . .

". . . Gaines' number one goal is that he wanted to get probation.

10

". . . [T]he State was not going to recommend probation for Mr. Gaines . . . .

". . . Gaines was not going to enter a plea pursuant to a plea bargain unless it was a plea for probation.

. . . .

". . . Gaines' position was that he would not enter a plea with the State . . . unless they were recommending probation. So there never was a plea offer communicated to . . . Pittman where the State was recommending probation. So assuming that . . . Gaines would have accepted the first offer, which was a State's recommendation of 85 months with [Gaines] being free to argue for probation, assuming he would have accepted that without finding so, *the Court that imposed the sentence, which was me, would not have granted probation, number one, and would not have imposed a sentence of 85 months or lower.*" (Emphasis added.)

The district court found that based on the evidence it was doubtful that Gaines would have agreed to accept the plea offer for a recommendation of 85 months with the right to argue for probation, stating:

"Because of my earlier factual findings where . . . Gaines was adamant that he wanted probation and a recommendation of probation, it's suspect whether he would have even accepted a recommendation by the State of 85 months wherein he is free to argue for probation. And why do I say that? . . . The reason why it's suspect that . . . Gaines would have accepted that first plea offer is [be]cause . . . Pittman in his testimony says oftentimes in his experience in dealing with plea offers where the State's gonna recommend a certain sentence of incarceration but the defense is free to argue for a lesser sentence or whatever they want, . . . Pittman says it doesn't seem that the Court cares in that the Court typically just follows the State's recommendation. . . . But for argument's sake, I will just assume that . . . Gaines would have accepted a sentence recommendation by the State of 33 percent more than the offer that only he was aware of, the 61 months, but the difference being that he was free to argue for probation. So assuming that he accepts it, would this Court have imposed a sentence of 85 months or less, because that is

11

the issue? [Be]cause . . . Gaines is arguing that—and I'm just assuming that if he would have accepted the first plea offer, he is saying, Judge, the worst case scenario I would have gotten is 85 months from the Court, and you gave me 109 months. But . . . Gaines does not meet his burden in that regard, . . . that I would have given 85 months: . . . First of all, the State was recommending at sentencing, ironically, a sentence of even less than 61 months, which was the only plea offer that . . . Gaines was aware of, which never occurred. The State was recommending a sentence . . . less than 61 months. . . .

"Yes. So the State [was] asking for 54 months. . . . And I d[id]n't follow the State's recommendation. I d[id]n't follow the defense recommendation. What I order[ed] [was] . . . all cases are consecutive. That resulted in a sentence of 109 months."

The district court also cited Gaines' "long-standing criminal history, the impact on the community, [and] the number of victims in all the cases." Also, the district court cited to the fact that Gaines committed several crimes during postrelease and that his presentence investigation report (PSI) included 45 entries. In particular, the district court pointed out that the PSI listed all "nontraffic-related crime[s] or DUI[s]" and that many of the entries included multiple counts. Accordingly, the district court reiterated that Gaines' criminal history warranted the "maximum consecutive" sentence.

The district court then concluded its comments by saying:

"Pittman was deficient in that he did not communicate to . . . Gaines that the first plea offer, which was [the] 85 months recommendation by the State and the defense is free to argue for anything else, including probation, *but that doesn't change the equation, because even assuming . . . Gaines would have accepted that, this court would not have imposed a sentence of . . . 85 months or less*[.]"

As such, the district court explicitly found that it would not have granted probation and would have imposed the same sentence. Because the district court explained that it would not have accepted the plea terms and would have imposed the same sentence, Gaines fails on both the second and third prong of the *Lafler* analysis. Moreover, based

12

on our review of the record, we find that the district court's findings and conclusions were reasonable based on the evidence presented.

Gaines also argues that his plea was not "fairly and freely made." However, Gaines does not once cite to the record in support of this argument nor does he cite any pertinent caselaw to support his claim. Issues not adequately briefed are deemed waived or abandoned. *State v. Arnett*, 307 Kan. 648, 650, 413 P.3d 787 (2018). A point raised incidentally in a brief and not argued therein is also deemed abandoned. *State v. Sprague*, 303 Kan. 418, 425, 362 P.3d 828 (2015). Failure to support a point with pertinent authority or show why it is sound despite a lack of supporting authority or in the face of contrary authority is akin to failing to brief the issue. *State v. Pewenofkit*, 307 Kan. 730, 731, 415 P.3d 398 (2018).

Nevertheless, a review of the record reveals that Gaines has failed to show that his decision to plead was not "fairly and freely made." Of course, whether to plea or go to trial is often a gamble and involves many factors. See Stephanos Bibas, Plea Bargaining Outside the Shadow of Trial, 117 Harv. L. Rev. 2463, 2507 (2004) ("The decision to go to trial is a gamble:  the payoff can be acquittal and complete freedom, but often the more likely outcome is conviction and a longer sentence."). So, Gaines faced a situation familiar to many criminal defendants. Furthermore, at the time he entered his plea, the district court properly explained the potential consequences of him pleading guilty and Gaines' decided to go forward.

Gaines' next argument is that he was misled or coerced into entering a plea. Again, Gaines fails to cite the record nor does he cite any caselaw to support his claim. In fact, his entire argument is only a few sentences long and is somewhat difficult to follow. Consequently, Gaines waives this issue on appeal as well. See *Arnett*, 307 Kan. at 650; *Sprague*, 303 Kan. at 425.

Finally, Gaines argues that his plea was not freely, voluntarily, and understandably made. According to Gaines, "[o]ne of the rights that [he] had in this case was the right to engage in plea negotiations with the [S]tate and enter into mutually agreed upon plea agreements." However, as the State points out, this argument is based on speculation. There is nothing in the record to suggest that the State would have ever offered a plea deal that would have been acceptable to Gaines because he was adamant about receiving probation. Likewise, Gaines' argument ignores the fact that even if he had known about and accepted the 85-month-sentence offer—a proposition the district court seriously doubted based on the evidence presented—the results would have been the same. The district court was very clear in its ruling that because of Gaines' long criminal history—which the district court noted was so lengthy "that the PSI department [stopped listing all of Gaines' criminal history because it] wanted to save paper"—that it would have still imposed the 109-month sentence.

We, therefore, conclude that the district court did not abuse its discretion in denying Gaines' postsentence motion to withdraw plea.

*Conflict of Interest Allegation*

Next, Gaines contends in his pro se supplemental brief that the district court erred by failing to inquire into a potential conflict of interest between he and his trial counsel. Evidently, Gaines is asserting that a conflict existed over the way in which his trial counsel was conducting plea negotiations. According to Gaines, the testimony presented at the hearing on the motion to withdraw plea should have been sufficient to place "the district court on notice of the nature of the potential conflict and triggered the court's duty to further inquire." Alternatively, Gaines asserts, "the district court had notice of that potential when the sentencing judge explicitly advocated that the record indicates that . . . Gaines was misinformed by his attorney during the plea negotiation phase."

14

Here, even if we were to assume that there was a conflict between Gaines and his trial attorney, the record reflects that the district court appointed a conflict-free counsel to represent him at the evidentiary hearing to explore the underlying facts relating to the plea negotiations. Specifically, the district court appointed Michael C. Brown to represent Gaines on August 12, 2016. Similarly, the district court has appointed conflict-free counsel to represent Gaines in this appeal. Accordingly, we do not find this to be a case in which the court failed to protect Gaines' right to conflict-free counsel.

*Application of K.S.A. 2016 Supp. 60-215(b)(2)*

Gaines' last contention is that the district court erred in denying his "Motion to Amend and Supplement Pleadings." In particular, he argues that the district court violated K.S.A. 2016 Supp. 60-215(b)(2). Of course, this statute is part of the Kansas Code of Civil Procedure. See *State v. Perez*, 267 Kan. 543, 547, 987 P.2d 1055 (1999). This statute simply does not apply to criminal proceedings. Thus, the district court did not err in dismissing Gaines' "Motion to Amend and Supplement Pleadings for Amended and Additional Findings."

Affirmed.