No. 104,503

STATE OF KANSAS, *Appellee*, v. JASON WADE SCHAEFFER, *Appellant*.

(286 P.3d 889)

Opinion filed October 19, 2012.

*Nancy Ogle*, of Ogle Law Office, L.L.C., of Wichita, argued the cause and was on the briefs for appellant, and *Jason Wade Schaeffer*, appellant pro se, was on a supplemental brief.

*Natalie A. Chalmers*, assistant solicitor general, argued the cause, and *Chadwick J. Taylor*, district attorney, and *Derek Schmidt*, attorney general, were with her on the briefs for appellee.

The opinion of the court was delivered by

BEIER, J.: Defendant Jason Wade Schaeffer pleaded guilty to first-degree murder, aggravated kidnapping, aggravated robbery, and a weapons violation in 1994, when he was 17. The district court judge sentenced Schaeffer to life in prison on each of the first two counts; 15 years to life on the third count; and 5 years on the fourth count, with all of the sentences to run consecutively. Schaeffer was permitted to take this direct appeal of his sentences out of time under *State v. Ortiz*, 230 Kan. 733, 735-36, 640 P.2d 1255 (1982).

Schaeffer's convictions arose out of the March 1993 abduction and shooting death of Timothy Riley. Because the facts of Schaeffer's crimes are pertinent to his sentencing challenge, we review them briefly.

Schaeffer, armed with a sawed-off shotgun, accosted Riley outside of Riley's Topeka home. Schaeffer ordered Riley into Riley's car, then drove around the block into an alley where Joshua Kaiser was waiting. Riley was then forced into the trunk of his car, and defendant and Kaiser drove around, eventually stopping at a friend's house. The friend asked about the car. Schaeffer and Kaiser told their friend that they had hijacked it and that its owner was locked in the trunk. One of the young men knocked on the car and shouted a question. From within the trunk came the sound of a human voice. When Schaeffer and Kaiser drove away, their friend called the police.

Meanwhile, Schaeffer and Kaiser drove to a rural area in Shawnee County, where they stopped and removed Riley from the trunk. They directed him to walk down a fence row in a field and to place his hands on a fencepost. Schaeffer then ordered Riley to a different post and asked him how he had fared in the trunk. Riley replied that the ride was bumpy. Schaeffer then raised the sawed-off shotgun and fired once into the back of Riley's head, and removed Riley's watch and ring. Police would later find Riley's lifeless body where it had fallen.

After the shooting, Schaeffer and Kaiser continued to drive around in Topeka. When police spotted the car, they gave chase. When the chase resulted in a wreck, the police apprehended Schaeffer and Kaiser. They found the sawed-off shotgun and Riley's watch in the car, and Schaeffer confessed his involvement in the crimes.

Because Schaeffer had three prior juvenile adjudications for crimes that would have been Class E felonies if he had been an adult, he was prosecuted as an adult in this case. He initially filed notice of an intent to rely upon an insanity defense and underwent a psychological examination at Larned State Security Hospital. No report of the examination is contained in the record before us.

After Schaeffer pleaded guilty as charged, he received the sentences detailed above.

On this appeal, Schaeffer raises one issue through counsel and 12 issues pro se. Counsel argues that Schaeffer's sentencing was fatally infected by the district judge's bias and prejudice against Schaeffer. We discuss this issue first. Of Schaeffer's 12 pro se issues, only two survive his decision to plead guilty to his crimes. We address these two issues together because both relate to the propriety of the district judge's consideration of Schaeffer's mental examination at sentencing.

### Sentencing Judge's Bias, Prejudice, or Corrupt Motive

At sentencing, the district judge made the following statements:

"I've thought a lot about this case . . . [and] this is probably one of the most heinous crimes that I've ever seen, read about, heard. It's atrocious, it's brutal, and it's cruel.

. . . .

"You've shown no remorse whatsoever . . . . [Y]ou have nothing to say to anybody. You've shown no remorse. You've been diagnosed as having alcohol abuse, cannabis abuse, personality disorders not otherwise specified, sadistic and antisocial.

"There is an incident contained in that Larned report that I have read that is a very sick incident. It's an extremely sick joke, if you want to look at it as that, on a very regressed patient. I'm not going to go into what that incident is. You know what it is, and you know what you did.

. . . .

"The word 'heinous' is defined as somebody who is grossly wicked, reprehensible, abominable. Those terms fit you to a T. You can sit here right now and look me straight in the face, and I would guarantee you right now that if you had a gun, you wouldn't hesitate to use it, whether on me or somebody else. Why? I'll never know, and neither will anybody in this room.

"The mere fact that I have read in the [presentence investigation report] about all the foster homes that you were in, that you were in my old hometown at one time, frightened me. When I read that I thought, 'My God! I've got relatives in that town. I've got nieces, nephews, great-nieces, great-nephews.' You don't care.

"Something that was said that I think probably sums up what I'm going to do to you: to some extent, you'll have a roof over your head, three meals a day, some recreation, and a place to sleep. You left a wife, a mother, a cohort, a friend, and two children to live with nightmares for the rest of their lives and have to constantly look over their shoulders wherever they go to see whether there's another Josh Kaiser or Jason Schaeffer, and I hate to say it in front of them, but there are

other Josh Kaisers and there are other Jason Schaeffers, and they're walking the streets of Topeka. They should not be allowed to walk. They should not be allowed to live. They should not be allowed to survive.

". . . I've talked about [your prior criminal history and your three prior felonies]. But if the Supreme Court, when this is appealed, desires to read the Larned report, as I have, they'll find out that you were involved in innumerable stuff as a teenager, misdemeanor or otherwise. Whether you were ever adjudicated or not for them, I don't know.

. . . .

". . . You can sit there, and you can smirk, and you can do whatever.

"If I could, the Hard 40 probably wouldn't be enough for you or for Mr. Kaiser."

In addition, the district judge "strongly urge[d], recommend[ed], to the State Parole Board that [Schaeffer] never ever see the light of day outside the penal system," finally saying again, "If I could do more, I would."

Schaeffer's counsel argues that these excessive and ill-advised comments by the district judge demonstrate that his sentences were the products of judicial bias, prejudice, or corrupt motive. In order to succeed on such a claim, Schaeffer must first show that the judge had a duty to recuse under the Kansas Code of Judicial Conduct and failed to do so and, second, that actual bias or prejudice warrants setting the sentence aside. We have recently held that bias or prejudice may be presumed when, based on objective standards, the probability of actual bias is too high to be constitutionally tolerable. *State v. Robinson*, 293 Kan. 1002, 1032, 270 P.3d 1183 (2012). This is not such a case. See *Withrow v. Larkin*, 421 U.S. 35, 47, 95 S. Ct. 1456, 43 L. Ed. 2d 712 (1975) ("Among [the cases in which bias or prejudice may be presumed] are those in which the adjudicator has a pecuniary interest in the outcome and in which he has been the target of personal abuse or criticism from the party before him); see also *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868, 876-84, 129 S. Ct. 2252, 173 L. Ed. 2d 1208 (2009) (same; bias also presumed where person with stake in case had "significant and disproportionate influence" in fundraising, campaigning for judge's election while litigation pending or imminent); *Davenport Pastures v. Board of Morris County Comm'rs*, 291 Kan. 132, 144-46, 238 P.3d 731 (2010) (in administrative action, Board's attorney's multiple roles, history of involvement in prior proceed-

ings created objective probability of actual bias too high to be tolerable when attorney assisted in adjudication); *State v. Sawyer*, 45 Kan. App. 2d 156, 158-60, 244 P.3d 705 (2011) (discussing *Caperton*, noting judicial bias or prejudice presumed only "in limited circumstances," on "extraordinary facts"), *rev. granted* September 21, 2011. Reversal is not required unless the judge's conduct actually prejudiced Schaeffer's rights. See *State v. Walker*, 252 Kan. 279, 290, 845 P.2d 1 (1993); *State v. Starbuck*, 239 Kan. 132, 134, 715 P.2d 1291 (1986).

A judge must recuse in any proceeding in which his or her impartiality might reasonably be questioned, including when the judge has a personal bias or prejudice concerning a party. Supreme Court Rule 601B, Kansas Code of Judicial Conduct, Canon 2, Rule 2.11(A)(1) (2011 Kan. Ct. R. Annot. 699). Disqualification of a judge is appropriate when the circumstances and facts of the case "create reasonable doubt concerning the judge's impartiality, not in the mind of the judge himself, or even, necessarily, in the mind of the litigant filing the motion, but rather in the mind of a reasonable person with knowledge of all the circumstances." *State v. Logan*, 236 Kan. 79, 86, 689 P.2d 778 (1984); see also *State v. Griffen*, 241 Kan. 68, 72, 734 P.2d 1089 (1987) (quoting 46 Am. Jur. 2d, Judges § 170).

We agree that the judge's comments in this case were generally excessive and ill-advised, and we are particularly troubled by those regarding Schaeffer living in the same town as certain members of the judge's family. These comments might cause a reasonable person to question the judge's impartiality, and they persuade us that the judge should have recused. But Schaeffer's claim still fails on appeal because he has not demonstrated that actual bias or prejudice warrants setting aside his sentences.

Although the district court judge expressed a preference for more severe punishment, he denied the State's request to convert Schaeffer's sentences to definite grid sentences subject to upward departure under what was then the relatively new Kansas Sentencing Guidelines Act.

Instead, the judge plainly evaluated several of the sentencing factors enumerated in the then-controlling K.S.A. 21-4606 (Ensley

1992). Those factors included: "[t]he defendant's history of prior criminal activity; . . . [t]he extent of the harm caused by the defendant's criminal conduct; . . . [w]hether the defendant intended that his criminal conduct would cause or threaten serious harm; . . . [and t]he degree of the defendant's provocation." The judge mentioned Schaeffer's three prior juvenile adjudications. He was well aware of the unprovoked and particularly cruel nature of Schaeffer's crimes in this case: Schaeffer was the lone initiator; he escalated the situation's seriousness; he boastfully displayed Riley's car with Riley in its trunk to a friend; and he mocked Riley by questioning him about the comfort of his trunk ride just before summarily executing him. The judge also expressly considered the harm Schaeffer caused to Riley's family. The mere fact that Schaeffer's sentences were harsh and consecutive does not establish actual prejudice.

Under these circumstances, Schaeffer's claim to entitlement to resentencing by a different district judge fails.

## CONSIDERATION OF MENTAL EXAMINATION

At Schaeffer's sentencing, defense counsel objected to the State's mention of a report of Schaeffer's psychological examination, arguing that the report was not in evidence, that it lacked foundation, and that it could not be properly considered by the judge. Before passing sentence, the judge stated that the Larned report was part of Schaeffer's presentence investigation report and that he had read it several times and was familiar with its content.

Schaeffer now argues that the district judge should not have considered the results of Schaeffer's psychological examination at all during sentencing. He also advances the more specific claim that the judge's consideration of statements Schaeffer made during the examination was error because Schaeffer did not receive *Miranda* warnings before making the statements. We reject both of these arguments.

First, in Kansas, a report on a psychological examination of a criminal defendant is a valid component of the defendant's presentence investigation report. See K.S.A. 21-4604(b)(3) (Furse) (presentence investigation report to include mental examination of

defendant); see also *State v. Korbel*, 231 Kan. 657, 663, 647 P.2d 1301 (1982) (discussing purpose of, necessity for presentence investigation report).

Second, Schaeffer's notice of his intent to raise an insanity defense constituted his consent to a court-ordered mental examination by an expert for the State, making *Miranda* warnings unnecessary. See *State v. Cheever*, 295 Kan. 229, 248-49, 284 P.3d 1007 (2012) (citing K.S.A. 22-3219[2] [statute governing today's nearest analog to insanity defense, *i.e.*, mental disease or defect]; *Buchanan v. Kentucky*, 483 U.S. 402, 423-24, 107 S. Ct. 2906, 97 L. Ed. 2d 336 [1987]; *Estelle v. Smith*, 451 U.S. 454, 465, 101 S. Ct. 1866, 68 L. Ed. 2d 359 [1981]; *State v. Ji*, 251 Kan. 3, 23, 832 P.2d 1176 [1992]). Our recent decision strictly limiting the State's introduction of evidence about such a psychological exam in the guilt phase of a capital trial does not govern the circumstances before us here. See *Cheever*, 295 Kan. at 248-49. Schaeffer's was not a capital case. The results of his psychological exam were considered by the district judge, not a jury, and only as relevant to sentencing factors, not to prove his guilt.

Affirmed.

LUCKERT, J., not participating.
J. DEXTER BURDETTE, District Judge, assigned.