NOT DESIGNATED FOR PUBLICATION

No. 121,281

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

IRINEO GARCIA
*Appellant*,

v.

STATE OF KANSAS,
*Appellee*.


MEMORANDUM OPINION

Appeal from Seward District Court; BRADLEY E. AMBROSIER, judge. Opinion filed August 14, 2020. Affirmed.

*Korey A. Kaul*, of Kansas Appellate Defender Office, for appellant.

*Russell Hasenbank*, county attorney, and *Derek Schmidt*, attorney general, for appellee.


Before GREEN, P.J., ATCHESON and GARDNER, JJ.


PER CURIAM: Irineo Garcia appeals the trial court judge's judgment not to recuse from Garcia's case after it was remanded by this court. Garcia also appeals the trial court's judgment denying his motion to withdraw his guilty plea. Because we conclude that the trial judge had no duty to recuse from Garcia's case, and that the trial court's denial of his motion to withdraw plea was supported by substantial competent evidence, we affirm the trial court.

In February 2013, Garcia entered no-contest pleas to three counts of attempted second-degree murder, in violation of K.S.A. 2010 Supp. 21-3402 and K.S.A. 2010 Supp.

1

21-3301. Based on those pleas, the trial court convicted Garcia of the attempted murder of his three children, who were then four, six, and seven years of age. In exchange for Garcia's plea of no contest to the amended complaint, the State agreed to ask for the three counts to run consecutively, with an upward durational departure to 294 months' imprisonment. At the plea hearing, the court asked Garcia if there were any promises made to cause him to enter his pleas. Garcia said no. The court asked Garcia if the reason he accepted the plea offer was because he would likely receive a longer sentence if he went to trial. Garcia said yes. At sentencing in March 2013, the court followed the plea agreement, found the proposed aggravating factor, and ordered a total sentence of 294 months' imprisonment.

In December 2016, Garcia moved the trial court for habeas corpus relief under K.S.A. 60-1507 and moved to withdraw his plea under K.S.A. 22-3210(d). In this motion, Garcia alleged that if not for "my attorney and the prosecution saying that my kids would be allowed to visit me, I would not have taken a plea bargain and would have gone to trial." Garcia alleged the following: "By making me these promises [my counsel] coerced me into the plea agreement he violated my due-process, because I told him I would take my case to trial if I could not visit with my kids."

The trial court treated the motion as one for habeas corpus relief under K.S.A. 60-1507 and denied it as untimely. See K.S.A. 2019 Supp. 60-1507(f) (one-year time limit). The trial court's summary denial noted that Garcia made "no attempt at showing manifest injustice," i.e., the exception allowing for filing beyond the one-year time limit. See K.S.A. 2019 Supp. 60-1507(f)(2). The court also stated that "the very heart of [Garcia's] motion is almost beyond belief and warrants no further consideration by this Court." Garcia appealed.

On appeal, this court reversed the trial court. *Garcia v. State*, No. 117,582, 2018 WL 3945932, at *3 (Kan. App. 2018) (unpublished opinion). First, this court

2

characterized Garcia's motion as a motion to withdraw his plea. 2018 WL 3945932, at *1. This court then held that Garcia's allegations, if proven in an evidentiary hearing, would provide a basis for relief. 2018 WL 3945932, at *2. Then this court remanded the case to the trial court for an evidentiary hearing.

At the beginning of the trial court's evidentiary hearing, Garcia asked the judge to recuse himself based upon "the way you responded to my motion, saying that you thought it was ludicrous for me to even bring this appeal back up." The trial court denied the request, determining that "[p]revious rulings are not a basis for recusal." The court then heard testimony on the circumstances of Garcia's plea agreement.

First, Garcia testified that his attorney told him that his children could visit him while he was in prison. He testified that this was "the only reason I took the plea, so that I would be able to be a father to them." Garcia testified that his attorney worked with the prosecution to arrange visitation in the Seward County Jail on the day of sentencing, as "a show of good faith."

Also, Garcia testified that he did not speak to his children until after sentencing. Yet, Garcia also stated that, in deciding whether to take the plea, he spoke with his children during a jail visit and asked them if they wanted to visit him in prison. He testified that his children said yes, which caused him to enter the plea agreement because it would allow him visitation with his children.

Garcia testified that he submitted visitation forms shortly after the Kansas Department of Corrections (KDOC) took custody of him. Garcia agreed with prison officials that his initial maximum security setting would be too scary for the children. And so, Garcia waited to pursue visitation until after he was reassigned to a low-medium security prison. He then believed the children would not be scared.

3

After Garcia was transferred into a low-medium security prison, the officials there denied his request for visitation. At this point, Garcia, believing that his plea agreement contained a condition requiring the prison officials to allow him to see his children, surmised that the plea agreement was not enforceable. And so, Garcia believed that his trial attorney and the prosecutor "should have known or they should have investigated" if the prison would be bound by the plea agreement.

Next, the children's mother testified that a no-contact order prevented Garcia from speaking to her or the children before Garcia took the plea agreement. She also testified that the plea agreement left communication open. ("The kids could communicate with him if they wished, and visitation was an option.") She testified that the children had not decided whether to visit Garcia in prison.

Clint Floyd, Garcia's attorney, also testified. Floyd testified that the plea agreement did not contain any promise about visits at the prison. Floyd also testified: "There was some discussions about whether or not he would have a visit here locally at the Seward County Jail, and that was a driving point from day one." A court order prevented Garcia from having contact with his children until sentencing. Floyd explained to Garcia that lifting the no-contact order would allow his children to visit him in jail immediately after sentencing and would leave open the possibility of prison visits if the children and their mother wanted to visit him. Floyd negotiated with the county attorneys, who agreed that the State's recommendations at sentencing would permit contact. Floyd then worked with the county attorney's office, the victim coordinator, the children's mother, jail staff, and the sheriff to arrange a visit once the existing no-contact order ended at sentencing.

Floyd was also asked whether there were any assurances to Garcia that his children would visit him at the penitentiary. Floyd testified as follows:

4

"No. We specifically talked about that. We talked about whether or not, you know, he could write his children. I said we would have to get through a plea or a trial, get through the sentencing phase, and depending on what was in the PSI about whether or not the court would continue a no-contact order with his kids as victims of the case . . . . Part of our plea did include lifting the no-contact order to allow that type of visitation. The PSI does reflect that. There's no marking for no visitation or no contact with the victims."

Floyd also testified that there were never any plea negotiations that included any promises that Garcia's children would visit him in prison. The prosecutor who handled the case also testified that the State never made a plea offer which promised Garcia that his children would visit him in prison. The trial court denied Garcia's motion to withdraw his plea.

Garcia timely appeals the trial court's order denying his motion.

*Did the Trial Court Judge Err by Not Recusing Himself on Remand?*

Garcia argues that the trial court erred in denying his request for a recusal. Garcia points to the court's initial denial of his motion to withdraw his plea, when the trial court stated:  "the very heart of petitioner's motion is almost beyond belief." Garcia argues that the court expressed not only an opinion but also an extreme opinion and should not have served as fact-finder on remand.

The State argues that the trial court properly stated the law when it stated that previous rulings were not a basis for recusal. The State contends that the trial judge's initial "almost beyond belief" comment was based on a lack of evidence and knowledge of the case. The motion judge had never dealt with the defendant before and did not preside over the underlying case. Therefore, the State argues that the trial judge was in a different circumstance when he held a hearing on remand and could view the evidence presented with an open mind. The State further argues that Garcia cannot show that bias

or partiality, if it existed, was significant enough to warrant reversal. Lastly, the State argues that Garcia cannot show that any bias or partiality affected the trial court's ruling in light of the evidence against Garcia's motion.

Appellate courts exercise de novo review over whether a trial court judge's recusal is required. *State v. Moyer*, 306 Kan. 342, 369, 410 P.3d 71 (2017) (addressing recusals based on due process and statutory factors). The interpretation of a Supreme Court rule, like the interpretation of a statute, is a question of law. *Kansas Judicial Review v. Stout*, 287 Kan. 450, 459, 196 P.3d 1162 (2008) (addressing the Kansas Code of Judicial Conduct).

A litigant may argue at least three substantive bases for a judge's recusal: (1) the statutory factors set forth in K.S.A. 20-311d(c); (2) the standards of the Kansas Code of Judicial Conduct; and (3) the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Moyer*, 306 Kan. at 370; see Supreme Court Rule 601B, Kansas Code of Judicial Conduct (2020 Kan. S. Ct. R. 439).

Garcia concedes that the first basis for a judge's recusal does not apply. K.S.A. 20-311d provides a mechanism to allow litigants to seek a change of the assigned judge in a case. The Legislature outlined a specific procedure to implement this change of a judge. Garcia admits that he did not follow these procedures and, therefore, the statutory basis for a judge's recusal has not been met.

In addition, "[a] judge shall disqualify himself or herself in any proceeding in which the judge's impartiality might reasonably be questioned." Supreme Court Rule 601B, Rule 2.11 (2020 Kan. S. Ct. R. 454). The Kansas Code of Judicial Conduct also requires that "[a] judge shall uphold and apply the law, and shall perform all duties of judicial office fairly and impartially." Rule 2.2 (2020 Kan. S. Ct. R. 448). ("'Impartial,'" "'impartiality,'" and "'impartially'" mean absence of bias or prejudice in favor of, or

against, particular parties or classes of parties, as well as maintenance of an open mind in considering issues that may come before a judge." Rule 601B, Terminology [2020 Kan. S. Ct. R. 442].)

To successfully argue that a judge should have disqualified himself or herself on appeal, an appellant must show the following: (1) that the judge had a duty to recuse himself or herself under the Kansas Code of Judicial Conduct and (2) that a showing of the judge's actual bias or prejudice warrants reversal. *In re Lucas*, 269 Kan. 785, 794, 7 P.3d 1186 (2000). An appellate court should find that

> "[d]isqualification of a judge is appropriate when the circumstances and facts of the case 'create reasonable doubt concerning the judge's impartiality, not in the mind of the judge himself, or even, necessarily, in the mind of the litigant filing the motion, but rather in the mind of a reasonable person with knowledge of all the circumstances.'" *State v. Schaeffer*, 295 Kan. 872, 876, 286 P.3d 889 (2012).

When the propriety of recusal is examined in the context of the Code, "the focus is on assuring that the defendant obtained a fair [hearing]." *Moyer*, 306 Kan. at 375. If a litigant can show that the judge "had a duty to recuse under the [Code] and failed to do so," the litigant must show "that actual bias or prejudice warrants setting the [court's holding] aside." *Schaeffer*, 295 Kan. at 875.

Assuming without deciding that Garcia established a duty to recuse, Garcia fails to show that actual bias or prejudice would warrant setting aside the court's holding in light of the evidence. Garcia testified that the plea agreement guaranteed visitation with his children. The prosecutor, Garcia's attorney, and the children's mother all contradicted his testimony. They testified that the promise involved a no-contact order. If the trial court entered a no-contact order, it would be an absolute bar preventing visitation. So, the State agreed not to recommend such an order. This agreement was thoroughly explained to Garcia, according to the evidentiary hearing testimony. Thus, Garcia fails to show that

7

judicial bias, rather than the weight of the evidence, caused the trial court to deny his motion to withdraw his plea, which we discuss in the next section.

Additionally, Garcia fails to show that his due process rights were violated by the trial judge not recusing. Our Supreme Court applies a two-prong test for whether recusal is required under the Fourteenth Amendment's Due Process Clause to the United States Constitution. That test asks "'whether the judge had a duty to recuse from the case because the judge was biased, prejudiced, or partial. If so, then the test [examines] whether the judge's failure to recuse resulted in actual bias or prejudice.'" *Moyer*, 306 Kan. at 375-76 (quoting *State v. Sawyer*, 297 Kan. 902, 909, 305 P.3d 608 [2013]). As explained in the preceding paragraph, Garcia has failed to show actual bias; however, "there has always been a safety valve that relieved a defendant of the obligation to show actual bias or prejudice." *Sawyer*, 297 Kan. at 909. That safety valve comes into play when "'experience teaches that the probability of actual bias . . . is too high to be constitutionally tolerable.'" 297 Kan. at 909 (quoting *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868, 877, 129 S. Ct. 2252, 173 L. Ed. 2d 1208 [2009]). The United States Supreme Court in *Caperton* provided a nonexclusive list of four examples, which Garcia correctly concedes does not apply.

Instead, Garcia relies on *Sawyer* to argue that the probability of bias is too high. In *Sawyer*, the trial judge had previously recused himself from presiding over the defendant's bench trial in another matter. 297 Kan. at 904-05. The trial court judge then refused to recuse himself in the next trial, reasoning that it was a jury trial and, therefore, the risk of bias was less than with a bench trial. 297 Kan. at 905. Our Supreme Court held this to be error, recognizing that the "heightened risk of actual bias" put the defendant's right to due process at risk. 297 Kan. at 910. But the facts of *Sawyer* stand in stark contrast to this case because the judge and defendant in *Sawyer* had a significant history of acrimonious interactions. That case was Sawyer's third case before that judge. 297 Kan. at 904. The judge had previously told Sawyer to "'be quiet'" and "'shut up.'" 297

Kan. at 911. Also, the judge had ordered that Sawyer be gagged. 297 Kan. at 908. The judge's bias was against Sawyer and not against one of his arguments. See 297 Kan. at 911-12. And finally, our Supreme Court thought it inconsistent for the judge to recuse himself in one trial but not the next trial, even when the second case was before a jury rather than to the judge. 297 Kan. at 911.

Conversely, the trial judge in this case had no previous contact with Garcia. A history of friction between judge and defendant was present in *Sawyer* but was absent in this case. The trial judge here was not similarly biased and could approach the case with "an open mind" on remand from this court. Garcia fails to show actual bias, and he also fails to establish the exception that the probability of actual bias is too high to be constitutionally tolerable.

Because the trial judge properly did not recuse himself, Garcia's argument on harmlessness need not be addressed.

*Did the Trial Court Abuse Its Discretion in Denying Garcia's Motion to Withdraw His Plea?*

Garcia argues two reasons that he should be allowed to withdraw his plea. First, he contends that his counsel was not competent in explaining the plea agreement adequately. Second, Garcia states that he did not understand the plea agreement sufficiently to show that his plea was fairly and understandingly made. Garcia also points out that he is not arguing that the plea agreement was breached.

The State argues that the plea agreement did not guarantee family visits in prison. The State asserts that Garcia's attorney adequately and competently explained this aspect of the plea agreement to Garcia. The State maintains that the combined testimonies of the prosecutor and Garcia's attorney were more credible than Garcia's testimony. Thus, the

9

State argues that the trial court correctly ruled that the plea agreement was clear and that Garcia understood the agreement as explained by his attorney.

"To correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw the plea." K.S.A. 2019 Supp. 22-3210(d)(2). Generally, an appellate court will not disturb a trial court's denial of a postsentence motion to withdraw plea absent an abuse of discretion. *State v. Johnson*, 307 Kan. 436, 443, 410 P.3d 913 (2018). A judicial action constitutes an abuse of discretion if (1) it is arbitrary, fanciful, or unreasonable; (2) it is based on an error of law; or (3) it is based on an error of fact. *State v. Ingham*, 308 Kan. 1466, 1469, 430 P.3d 931 (2018).

Three factors (often referred to as the *Edgar* factors) generally guide a trial court's consideration of whether a defendant has shown the good cause required by K.S.A. 2019 Supp. 22-3210(d)(1) to withdraw a plea before sentencing: (1) whether the defendant was represented by competent counsel; (2) whether the defendant was misled, coerced, mistreated, or unfairly taken advantage of; and (3) whether the plea was fairly and understandingly made. *State v. Edgar*, 281 Kan. 30, 36, 127 P.3d 986 (2006). These factors should not be applied mechanically and to the exclusion of other factors. *State v. Fritz*, 299 Kan. 153, 154, 321 P.3d 763 (2014) (citing *Edgar*, 281 Kan. at 36). These factors establish "'viable benchmarks'" for the trial court when exercising its discretion, but the court should not ignore other facts that might exist in a particular case. *State v. Schaefer*, 305 Kan. 581, 588, 385 P.3d 918 (2016). Factors a court generally considers in determining whether a defendant has shown the manifest injustice necessary to withdraw a plea after sentencing mirror those considered when reviewing for good cause to support a presentence motion. See *Johnson*, 307 Kan. at 443.

Here, after an evidentiary hearing on remand, the trial court issued its written order with findings of fact and conclusions of law. Garcia's argument raises mixed questions of fact and law. When reviewing a mixed question of fact and law, appellate

courts apply a bifurcated standard of review. Appellate courts generally review the factual findings under the substantial competent evidence standard and apply unlimited review to the conclusions of law based on those facts. *State v. Johnson*, 304 Kan. 924, 950, 376 P.3d 70 (2016). Appellate courts do not reweigh evidence, determine credibility, or resolve evidentiary conflicts in determining whether a trial court's factual findings are supported by substantial competent evidence. *State v. Talkington*, 301 Kan. 453, 461, 345 P.3d 258 (2015).

First, Garcia asserts that he is entitled to relief because his trial counsel was ineffective. To prevail on this point, Garcia must show the following:  (1) that his trial counsel's performance was objectively unreasonable and (2) that but for his trial counsel's deficient performance, he would not have entered his plea. See *State v. Morris*, 298 Kan. 1091, 1103-04, 319 P.3d 539 (2014). He claims that his attorney was not competent because he did not adequately explain to him that the agreement did not bind KDOC and that KDOC could withhold visitation with his children.

Garcia's argument fails because he asks this court to reweigh evidence or resolve conflicting testimony, which this court cannot do. See *Talkington*, 301 Kan. at 461. The trial court ruled that Garcia's attorney explained the terms of the plea agreement as follows:  (A) one visit in the Seward County Jail and (B) the State would not request a no-contact order. The prosecutor's testimony supported the finding that this was the plea agreement conveyed to Garcia. The children's mother also testified that there would not be an order which prevented contact between Garcia and his children. This shows that she understood the parameter of the terms of the plea agreement. Therefore, substantial competent evidence supported the trial court's ruling that Garcia's attorney provided competent representation. Having made that ruling, the trial court did not err in denying Garcia's motion on the grounds that his counsel was not competent.

11

Second, Garcia argues that he should be allowed to withdraw his plea because, regardless of his counsel's competence, he did not understand the plea agreement. Garcia argues that he was confused between the one visit with his children at the Seward County Jail versus the later supposed visits with his children while incarcerated with KDOC. The trial court reviewed the transcript of the plea hearing, comparing it to Garcia's testimony at the hearing on his motion to withdraw his plea. The trial court found only conjecture and no credible testimony to support Garcia's professed confusion about the plea agreement.

Thus, substantial competent evidence supports the trial court's ruling that Garcia's plea was fairly and understandingly made. At the plea hearing, Garcia never stated that anyone promised his children would visit him in prison. Floyd's testimony showed that he explained to Garcia that visitation would depend on multiple factors, from the existence of a no-contact order to the desire of his children to visit him. The mother's testimony showed that the plea agreement was clear and that a layperson could understand it. The trial court's ruling and the basis for its ruling are properly supported by the record. And so, the trial court did not err in denying Garcia's motion to withdraw his plea on the grounds that the plea was not understandingly made.

For the preceding reasons, we affirm the ruling of the trial court.