NOT DESIGNATED FOR PUBLICATION

No. 123,538

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

KYLAR M. DAILY,
*Appellant*.

MEMORANDUM OPINION

Appeal from Nemaha District Court; JAMES A. PATTON, judge. Opinion filed October 29, 2021.
Affirmed.

*Chris Biggs*, of Knopp and Biggs, P.A., of Manhattan, for appellant.

*Brad M. Lippert*, county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before ARNOLD-BURGER, C.J., GREEN and BUSER, JJ.

PER CURIAM: Kylar M. Daily appeals the revocation of his probation and
modification of his underlying sentence for his aggravated battery conviction in 2019. On
appeal, he argues the district court abused its discretion because the court gave
insufficient weight to several factors, most notably his progress in treatment since the
violations occurred. Daily also asserts the court ignored certain statutory provisions and
the Kansas Supreme Court's initiative to create special courts for military combat
veterans. After a careful review, we find no error and affirm.

1

In October 2019, Daily agreed to enter a no contest plea to a single count of aggravated battery. Highly summarizing the facts of the crime, Daily beat his girlfriend (Casey Vaught) so brutally and severely that doctors diagnosed her with a lacerated liver, lacerated spleen, and internal bleeding. The district court accepted Daily's plea and found him guilty as charged.

At sentencing, the district court granted Daily's motion for a dispositional departure and placed him on probation for a period of 36 months with an underlying prison sentence of 43 months. Among other conditions of probation, the court ordered the defendant to obey the laws of the State of Kansas; to not possess or consume intoxicants of any kind; and to have no contact with Vaught except to exchange their minor child in a public place or being present for the child's medical treatment.

A mere five days later, the State filed an affidavit of probation violation alleging Daily violated probation by breaking the law, consuming alcohol, and contacting Vaught within hours of being sentenced. Attached to the affidavit were:  a complaint charging Daily with one count each of domestic battery and violation of a protective order, and a narrative report detailing the incident.

The report alleged that on the day of sentencing, Daily called Vaught around 8:30 p.m. from a restricted number and they spoke cordially for about 20 minutes. She then invited him to come over to her apartment. Daily arrived there around 9:15 p.m. and they spoke civilly for about an hour. During the conversation, Vaught noticed Daily was in a weird mood and he informed her he had consumed some beers at a friend's house before arriving. She asked him to leave, which he did around 10:30 p.m. without incident.

A few minutes after leaving, Daily sent Vaught a Snapchat message asking to return because he had left a vaping device there. She agreed and he arrived around 10:45 p.m. Daily knocked on the door and Vaught opened it slightly to hand him the vaping device through the small opening. He then asked about two shirts he believed were in the apartment, to which Vaught replied she would get the shirts to him later. At that point, Daily put his foot in the doorframe so that Vaught could not close it and began speaking in a "'demanding'" and "'stern'" tone about getting his shirts back. She told him to leave, and the argument escalated into Vaught pushing Daily on his upper chest with the palms of her hands. Dailey then reached into the doorway and punched Vaught in the right jaw with a closed fist. Vaught stepped back and began yelling for help, while Daily left the apartment.

The district court issued a bench warrant for Daily for the probation violation and law enforcement executed it the same day. While in custody, Daily contacted Vaught by telephone. During these conversations, he urged her to either not show up in court or to change her testimony.

Daily bonded out of jail the next day but continued his contact with Vaught. A narrative attached to the affidavit alleged that Daily and Vaught both tried to contact each other a day after Daily bonded out of jail and each reported the contact to the police. A police officer advised Daily not to respond to Vaught's contact attempts and forward them to him instead or call the police if she showed up at his house. Likewise, the Nemaha County Attorney advised Vaught to send a text to Daily asking him to call her, then record the phone call. Daily called her around 12:20 a.m. on November 30, 2019, after which Vaught provided a recording of the conversation to the police who forwarded it to the county attorney for review.

The district court issued a second bench warrant for Daily in January 2020 on the added probation violations. Again, law enforcement executed the warrant the same day it was issued, and Daily posted a bond to secure his release.

The district court did not conduct the probation violation hearing until almost a year after the alleged violations. By the date of the eventual hearing, Daily had been found guilty in bench trials of the crimes charged. He stipulated that the allegations in the probation revocation affidavit were true and accurate. There were no additional violations of his probation after his release in January 2020.

Daily testified at the hearing. He advised the court—and his community corrections officer confirmed— that he had completed an inpatient treatment program within a month or two of his release. Daily described how the program allowed him to learn how to cope and manage his PTSD through classes and connecting him with similar individuals. Daily said before the treatment he was mainly using alcohol to cope with his mental health issues but that he was now on a medication regimen that has helped him manage his mental health. He explained that his relationship with Vaught was toxic because they were codependent and alcoholics. Daily believed that the various no-contact orders "made things more difficult than anything," but said the treatment program and medication "helped me to separate myself from the situation and learn how to deal with it better." Daily believed he could succeed on probation because he had been keeping busy by helping his cousin set up his shop, reporting to his supervision officer as directed, and remaining sober.

Defense counsel argued that the court should reinstate Daily's probation because while "the passage of time is not sufficient to warrant additional good will," Daily had successfully engaged in treatment since the violations occurred. Defense counsel asked the court to consider the jail time and house arrest served on the subsequent convictions as probation sanctions and reinstate Daily to probation.

4

The district court denied the request, instead revoking Daily's probation. But the court did modify his sentence to 24 months. The court began by commenting:

"This was a very serious case because whether you're co-dependent, whether you're co-defendant, or you're anything else, there was a significant amount of injury that occurred to Miss Vaught. You may think and blame it on your PTSD and there may be some value in that reliance, but when it all comes down to it you can control your behavior because you have been."

After asking about Daily's medication regimen, the district court found that "all requirements necessary for disposition in this matter has been or have been established." In particular, the court noted Daily originally received a dispositional departure on behalf of a request by the State and the victim, and said,

"Quite honestly you should have gone to prison right then because of the nature and affect and all of those injuries that occurred whether you were drinking or not drinking. The Court gave you a chance to be on probation. You couldn't even go 24 hours without violating that, and now the only reason you've been successful as far as that issue you were always scared that something was going to happen. Well it's going to happen today."

Before ending the hearing, the court explained the sentence reduction was "giving you credit for the behavior that you have been able to do while we've been awaiting disposition but that doesn't change what you did" and then added, "[o]rdinarily you wouldn't have even gone on probation at the beginning had that not been the recommendations of the parties but 24 months is a reasonable amount that I am doing in this particular case under the circumstances."

Daily timely appealed.

5

Daily argues on appeal that the district court abused its discretion in revoking his probation.

An appellate court generally reviews the district court's revocation of an offender's probation for an abuse of discretion. *State v. Coleman*, 311 Kan. 332, 334, 460 P.3d 828 (2020). A judicial action constitutes an abuse of discretion if (1) it is arbitrary, fanciful, or unreasonable; (2) it is based on an error of law; or (3) it is based on an error of fact. *State v. Ingham*, 308 Kan. 1466, 1469, 430 P.3d 931 (2018). The judicial action is unreasonable when no reasonable person would have taken the same action. *State v. Gumfory*, 281 Kan. 1168, 1170, 135 P.3d 1191 (2006).

But once a court has granted a defendant probation, they obtain a conditional liberty interest in remaining on probation and may only have it revoked for violating the conditions of probation. *State v. Hurley*, 303 Kan. 575, 581, 363 P.3d 1095 (2016). Thus, the decision to revoke probation usually involves two steps:  (1) a factual determination that the probationer has violated a condition of probation; and (2) a discretionary determination as to the appropriate disposition in light of the proved violations. *State v. Skolaut*, 286 Kan. 219, Syl. ¶ 4, 182 P.3d 1231 (2008).

Daily does not dispute that he violated his probation. Indeed, the record shows that Daily stipulated to violating his probation by committing additional crimes—notably, domestic battery and two counts of violating a protective order, all against the same victim.

Daily also acknowledges that the district court did not have to impose any sanctions before revoking his probation under the applicable statutory framework for probation violations. Because he committed his original crime in 2018, the version of the

statute in effect at that time controls here. See *Coleman*, 311 Kan. at 334-37. And as he acknowledges, a court can revoke probation and impose the underlying sentence either ""[i]f the offender commits a new felony or misdemeanor while the offender is on probation" or "the probation . . . was originally granted as the result of a dispositional departure." K.S.A. 2018 Supp. 22-3716(c)(8)(A), (c)(9)(B).

Daily was granted a dispositional departure to probation, imposing a 36-month probation term with an underlying 43-month prison sentence. Then, at the probation violation hearing, Daily stipulated to being convicted of one count of domestic battery and two counts of violation of a protective order. As a result, the court did not need to impose any sanctions before revoking his probation.

So Daily does not argue that the court's decision was based on an error of law or fact. Instead, he describes the "[g]ravamen" of his appeal that the acts that were in violation of his probation were *de minimis* when compared to the offense for which the court originally convicted him and he committed the violations before he had received any treatment. He essentially makes three separate arguments on this point: (1) the court failed to consider the effect that PTSD related to his status as combat veteran had on his offenses; (2) the court expressed contempt or partiality against veterans when revoking his probation; and (3) the court ignored his progress on receiving treatment and positive behavior during the year after his violations occurred. We will examine each in order.

Daily suggests the court abused its discretion by discounting his PTSD because of his status as a combat veteran and the effect it had on the original offense and later probation violations. As support, he asks this court to take judicial notice of the Kansas Supreme Court's recent series of webinars on creating "Veterans Treatment Courts" in Kansas. He also references statutory provisions that allow a court to consider whether a defendant's combat-related injuries contributed to the commission of an offense. See K.S.A. 2018 Supp. 21-6630 (authorizing sentencing court to order treatment for veterans

7

where the offense was committed as the result of combat-related injuries and falls within presumptive nonprison category); K.S.A. 2018 Supp. 21-6815(c)(1)(F) (including whether a veteran committed an offense as a result of a combat-related injury as a mitigating factor at sentencing).

Yet, as the State correctly notes, none of these provide any relief to Daily.

To start, the information available on the Judicial Branch website that he references does not appear to fall within any category of facts that we can judicially notice, nor does Daily point to any in his brief. See K.S.A. 60-409. But even so, Daily would not be eligible to participate in such a program based on the nature of his underlying conviction. See Kansas Judicial Branch – Veterans Treatment Courts, Johnson County, Kansas Veterans Treatment Court Veteran Participant Brochure, https://www.kscourts.org/KSCourts/media/KsCourts/court%20administration/Veterans_T reatment_Court/JohnsonCountyVeteransTreatmentCourtParticipantBrochure.pdf (specifying that the court must exclude "[o]ffenses involving serious bodily harm" from the Veterans Treatment Court). Daily was convicted of aggravated battery under K.S.A. 2018 Supp. 21-5413(b)(1), which includes "great bodily harm" or "disfigurement" of another person as an element of the offense. The facts showed that Vaught suffered a lacerated liver, lacerated spleen, and internal bleeding and accrued significant medical expenses as a result.

Next, the statute Daily cites authorizing treatment for combat veterans, explicitly applies only where a "defendant's current crime of conviction and criminal history fall within a presumptive nonprison category under the sentencing guidelines." K.S.A. 2018 Supp. 21-6630(b)(1). Again, Daily was convicted of aggravated battery, a severity level 4 person felony, and faced a presumptive prison sentence between 38 and 43 months.

Third, the other provision upon which Daily relies, K.S.A. 2018 Supp. 21-6815(c)(1)(F), could have supported Daily's request for dispositional departure, but the record shows he never argued before the district court that his original crime resulted from an injury or disorder connected to his military service. Even so, he was granted a dispositional departure originally and a durational departure by the modification of his sentence following revocation of his probation. But more to the point, Daily provides no authority showing that this provision—which speaks to mitigating factors in support of a sentencing departure— applies when a court is considering whether to revoke probation.

As for Daily's claim that the district court's comments suggested contempt for or partiality against veterans, the record betrays that assertion. At no point did the court suggest it was revoking Daily's probation because he received special treatment for being a veteran. Instead, the court's comments were more directed at the nature of Daily's crimes, which involved a "significant amount of injury that occurred to Miss Vaught." Comments about the nature of a defendant's violent criminal history or expressing a preference for more severe punishment do not rise to the level of actual bias when the court adheres to sentencing guidelines. See *State v. Schaeffer*, 295 Kan. 872, 874-76, 286 P.3d 889 (2012) (finding a judge's comments that a murder defendant "'should not be allowed to survive'" did not warrant reversal because judge did not deviate from presumptive sentence).

Finally, Daily contends the district court abused its discretion in revoking his probation because it ignored the progress he made. His argument is essentially that the court's decision was unreasonable because the violations occurred before he had a chance to engage in treatment, and he showed sufficient progress and compliance with probation terms for nearly a year until the probation violation hearing.

Daily's assertion that the district court ignored his progress is not entirely accurate because—as the State points out—the court chose to reduce his underlying sentence from

9

43 to 24 months. In doing so, the court specifically noted reducing his sentence was "reasonable" because it would give him "credit for the behavior that you have been able to do while we've been awaiting disposition." A reasonable person could agree with this disposition because the court explicitly noted it had considered the progress he had made.

Ultimately, it cannot be said that no reasonable person would have taken the same action as the district court given the circumstances. As a result, we affirm the district court's decision to revoke Daily's probation and to impose a modified underlying sentence.

Affirmed.