NOT DESIGNATED FOR PUBLICATION

No. 123,669

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

IN THE MATTER OF J.S.

MEMORANDUM OPINION

Appeal from Lyon District Court; KEITH L. COLLETT, magistrate judge. Opinion filed February 25, 2022. Affirmed.

*Frederick L. Meier II*, of Emporia, for appellant.

*Meghan K. Morgan*, assistant county attorney, and *Marc Goodman*, county attorney, for appellee.

Before BRUNS, P.J., MALONE, J., and RICHARD B. WALKER, S.J.

PER CURIAM: J.S.—an inmate at the Ellsworth Correctional Facility—appeals from the district court's denial of his motion to appeal out of time and from his motion to withdraw plea. Both motions relate to J.S.'s 1992 juvenile adjudication in Lyon County for felony theft of a motor vehicle. Based on our review of the record in light of Kansas law, we do not find that the district court erred in denying J.S.'s motions. Accordingly, we affirm.

FACTS

On January 13, 1992, J.S.—who was 15 years old at the time—was adjudicated as a juvenile offender arising out of the theft of a motor vehicle. The adjudication was the result of a stipulation entered on the record at a detention hearing. At the time of his

1

adjudication in this case, J.S. had previously been adjudicated a juvenile offender for his involvement in several other motor vehicle thefts.

At the 1992 detention hearing, the following colloquy occurred between the district court, J.S., and Jeffry J. Larson, who served as J.S.'s attorney:

"MR. LARSON:  Judge, I realize this is a detention hearing, but I have discussed this with my client and, in fact, we have discussed the entire matter. He is willing to go ahead and stipulate to the complaint at this time. I believe that would make the issue of a detention kind of a moot point, especially in light of the fact that we are also prepared to proceed through disposition today.

"I've discussed this with him, as I mentioned, it's my understanding, as I said, that he would stipulate to the complaint. I believe he understands that if the Court accepts his stipulation, he will not have a trial. I believe he also understands that he would not have the right to appeal nor would he have the right to cross-examine witnesses or ask the Court to subpoena witnesses on his behalf. I explained to him that the only matter he would be able to appeal would be the disposition, whether you did it or whether another judge in his home county did that. He indicated that he would be willing to waive those rights and stipulate at this time.

"I believe he understands that the word 'stipulate' means to admit or, in essence, he would be pleading guilty. I've informed him of the rule that we refer to as 'Three Strikes and You're Out.' He is 15 and he has told me this would be his second felony conviction. I believe he understands that should he ever receive a third after the age of 16, he would be tried as an adult. I don't know of any promises or threats that have been made to him in order to get him to stipulate at this time and I obviously would remind the Court that I am court appointed.

"THE COURT:  Is that correct, [J.S.]?

"THE RESPONDENT:  Yes.

"THE COURT:  Mr. Larson was appointed to represent you, are you satisfied with his legal advice?

"THE RESPONDENT:  Yes.

"THE COURT:  And did you understand everything that he stated to the Court?

"THE RESPONDENT:  Yes.

"THE COURT:  Is that correct?

"THE RESPONDENT:  Yes.

"THE COURT:  And you understand what stipulation means?

"THE RESPONDENT:  Yes.

"THE COURT:  And is it your desire to give up your right to the detention hearing that you were here brought back today and you wish to stipulate to this charge?

"THE RESPONDENT:  Yes.

"THE COURT:  And do you understand the two strikes—'or 'Three Strikes, You're Out?

"THE RESPONDENT:  Yes.

"THE COURT:  Does any of that have an effect on your plea? Does it change your plea in any way?

"THE RESPONDENT:  No.

"THE COURT:  And you are then stipulating to this charge of the theft of this vehicle?

"THE RESPONDENT:  Yes.

"THE COURT: The Court will accept your stipulation and find you as a juvenile offender."

After adjudicating J.S. as a juvenile offender, the district court placed him in the custody of the State.

In 1994, J.S. pled guilty to first-degree murder, aggravated kidnapping, aggravated robbery, and a weapons violation arising out of a carjacking in Shawnee County. The district court sentenced him to life in prison on each of the first two counts; 15 years to life on the third count; and 5 years on the fourth count. The district court also ordered each of the sentences to run consecutive. The convictions and sentences were subsequently affirmed by the Kansas Supreme Court. *State v. Schaeffer*, 295 Kan. 872, 872-73, 286 P.3d 889 (2012).

Later, in 2015, J.S. filed an unsuccessful K.S.A. 60-1507 motion challenging his convictions from the 1994 case. *Schaeffer v. State*, No. 119,345, 2019 WL 1413823 (Kan. App. 2019) (unpublished opinion). He has also attempted to appeal his other juvenile cases out of time. See *In re Schaffer*, No. 120,630, 2019 WL 4123491, at *2-3 (Kan. App. 2019) (unpublished opinion); *In re J.S.*, No. 121,485, 2020 WL 3116496, at *1 (Kan. App. 2020) (unpublished opinion).

On February 1, 2018, J.S. filed a motion to file an appeal out of time in his 1992 juvenile adjudication. In addition, on November 29,2018, he moved to withdraw his stipulation in the 1992 juvenile action. The district court held an evidentiary hearing on both motions on November 30, 2018.

At the hearing, J.S. testified on his own behalf. After considering the testimony and the arguments of counsel, the district court denied both motions. In the subsequent journal entry filed on January 8, 2019, the district court found "that the respondent did

not file his appeal or his Motion in a timely manner; 26 years have passed, records indicate he understood, that the respondent knew what he what was doing when he entered his plea." Thereafter, J.S. filed a notice of appeal from the district court's decision.

ANALYSIS

On appeal, J.S. makes two primary arguments. First, he argues that he should be allowed to appeal his 1992 juvenile adjudication for felony theft of a motor vehicle out of time because he was not properly advised of his rights. Second, he argues that he should be allowed to withdraw his stipulation in the 1992 juvenile adjudication because he was not aware of the disposition options available. In response, the State argues that the issues presented are moot and that we do not have jurisdiction to hear these matters.

Without resolving the mootness issue, we move to the merits of J.S.'s arguments. In 1992, J.S. had 10 days to file his notice of appeal under K.S.A. 38-1681(b) (Ensley 1986). Moreover, appellate jurisdiction is limited to the extent provided by law. K.S.A. 2020 Supp. 22-3608. As a result, an untimely notice of appeal usually leads to dismissal of an action. See *State v. Patton*, 287 Kan. 200, 206, 195 P.3d 753 (2008). However, the Kansas Supreme Court has carved out limited exceptions to this general rule where the defendant was: (1) not informed of his or her rights to appeal, (2) not provided an attorney to exercise those rights, or (3) provided an attorney for that purpose who then failed to perfect and complete an appeal. *State v. Ortiz*, 230 Kan. 733, 735-36, 640 P.2d 1255 (1982).

J.S. argues that the first *Ortiz* exception applies because the district court failed to advise him of his right to appeal and failed to advise him of the deadlines for filing an appeal. However, the Kansas Supreme Court recently rejected this argument in *In re I.A.*, 313 Kan. 803, 491 P.3d 1241 (2021). In that case, our Supreme Court held that "[a]

5

juvenile offender has no statutory or constitutional right to have a district court judge inform him or her of a right to appeal." 313 Kan. 803, Syl. Thus, due process does not require that the deadline for a juvenile offender to file an appeal be extended even if the district court failed to mention the right to appeal when adjudicating the juvenile.

J.S. also argues that the third *Ortiz* exception applies because his appointed attorney failed to perfect an appeal. Another panel of our court has held that the third *Ortiz* exception may apply in juvenile offender cases if it can be shown that the failure to appeal was caused by the ineffectiveness of counsel. See *In re Schaffer*, 2019 WL 4123491, at *5-6. Although we agree with the panel in *In re Schaffer*, a review of the record in this case reveals that J.S. has not alleged or argued that he instructed his attorney to file an appeal following the 1992 juvenile adjudication. Likewise, there is nothing in the record to suggest that "but for appointed counsel's deficient failure to either consult with the movant or act on the movant's wishes, an appeal would have been filed." *Albright v. State*, 292 Kan. 193, Syl. ¶ 5, 251 P.3d 52 (2011).

In this case, the district court held an evidentiary hearing on J.S.'s motions. At the hearing, J.S. testified:

"Q. Tell the Court what the issue is with the reason you're wanting to appeal?

"A. Okay. Well, I've—recently, I've been studying, and I knew something wasn't right with this case the whole time and I couldn't figure it out, and recently, another inmate helped me and showed me laws where they violated my constitutional rights when they took my plea for this case.

"Q. Now, let's talk specifically about that now. What do you believe happened at the plea hearing that was a violation of your constitutional rights?

"A. Okay. One, I was not informed of the nature of the charges against me. Uh, nobody told me it was a Class E felony. Whenever they took my plea, he asked me, "How do you

plead to the theft of this car? Are you stipulating to the theft of this car? And he didn't tell me it was a Class E felony. He didn't read the statute to me. He didn't tell me I had the right to go to a jury trial. He didn't tell me I had a right to call witnesses or subpoena witnesses. There was no development of a factual basis. He didn't ask me which car it was or anything.

"Q. And when you say "he," who are we speaking of?

"A. Uh, the judge. I can't remember his name."

Further, J.S. testified:

"Q. You had the appeal in 2012, correct?

"A. I did.

"Q. And so the reason you didn't pursue anything in this case is because you thought it was different because it was a juvenile?

"A. I didn't fully understand it, and even the appeal in 2012, I had numerous people helping me.

"Q. And you didn't ask them about any of the juvenile cases?

"A. I talked to several people about juvenile cases, but guys in prison don't know a lot about juvenile cases, because that's not what we're there for. Most guys in prison, they study criminal law as far as adult stuff and it wasn't until I ran into a guy that had, like, the same stuff going on with his juvenile stuff and he told me, 'Look, you have these rights, man. They can't do this to you, you know, they were supposed to inform you of this.' And he showed me—he got the law for me, and I have it right here, but I'm sure that you already know it. And he showed it to me and he's like, 'The Court'—it says right here—'The Court shall inform the defendant of these five things.' And they didn't do that. And he asked me, to the best of my recollection, did they do this? And I'm, like, 'No, they

7

didn't.' And I didn't know until he showed me the law that that's what they were supposed to do. And then as far as the appeal process goes, I didn't know about all that.

"Q. How well—

"A. I had to study that."

In the exchange, J.S. testified that he only decided to attempt to appeal from his 1992 juvenile adjudication more than twenty years after he was adjudicated. Moreover, J.S. acknowledges in his brief that "[t]he record from 1992 indicates (briefly) that [he] was advised, by counsel, of his limited right to appeal the sentence imposed." We find nothing in the record to suggest that the counsel representing him in the juvenile adjudication failed to either consult with J.S. or failed to act upon his wishes regarding an appeal. Accordingly, we conclude that the district court did not err in denying J.S.'s motion to appeal out-of-time.

Similarly, we conclude that the district court did not err in denying J.S.'s untimely motion to withdraw his stipulation. Because the Revised Kansas Juvenile Justice Code, K.S.A. 2020 Supp. 38-2301 et seq., does not contain provisions for motions to withdraw a stipulation, we look to criminal procedural statutes. See *In re P.L.B.*, 40 Kan. App. 2d 182, 188, 190 P.3d 274 (2008). Under K.S.A. 2020 Supp. 22-3210(d)(2), a court may permit a defendant to withdraw his or her plea after sentencing to correct manifest injustice. Generally, we will not disturb a district court's denial of a postsentence motion to withdraw plea absent an abuse of discretion. *State v. Johnson*, 307 Kan. 436, 443, 410 P.3d 913 (2018).

A defendant, however, must file a motion to withdraw his or her motion to withdraw plea within one year of final judgment pursuant to K.S.A. 2020 Supp. 22-3210(e)(1). There was a one-year grace period from the enactment of the time limit, but the grace period expired on April 15, 2010. See *State v. Szczygiel*, 294 Kan. 642, Syl. ¶ 2,

279 P.3d 700 (2012). Here, J.S. filed his motion more than eight years after the expiration of the grace period.

The deadline for filing a motion to withdraw a plea may be extended only upon an "affirmative showing of excusable neglect by the defendant." K.S.A. 2020 Supp. 22-3210(e)(2). Where a defendant makes no attempt at an affirmative showing of excusable neglect, we will find the motion untimely and procedurally barred. *State v. Parks*, 308 Kan. 39, 44, 417 P.3d 1070 (2018). Here, it is undisputed that J.S.'s motion is untimely. Nevertheless, he has failed to establish "excusable neglect" for waiting until 2018 to attempt to withdraw his stipulation in the 1992 juvenile adjudication. Thus, we do not find that the district court erred in denying J.S.'s motion to withdraw plea.

Affirmed.